240 So.2d 198 (1970)
McARTHUR JERSEY FARM DAIRY, INC., Appellant,
v.
Sophia BURKE, Joined by Frank Burke, Her Husband, Appellees.
No. 69-566.
District Court of Appeal of Florida, Fourth District.
October 14, 1970.
*199 Stephen C. McAliley, of Carlton, Brennan & McAliley, Fort Pierce, for appellant.
John A. Gentry, III, of Moyle, Gentry & Jones, West Palm Beach, and Conely & Conely, Okeechobee, for appellees.
CROSS, Chief Judge.
Appellant-defendant, McArthur Jersey Farm Dairy, Inc., appeals a judgment entered pursuant to a jury verdict in favor of the appellee-plaintiffs, Sophia Burke and her husband Frank Burke, for damages arising out of an automobile accident. We affirm.
The plaintiffs owned and operated a nursery and had contracted with the defendant, through its superintendent, for planting shrubbery on the defendant's dairy farm. While the plaintiffs were preparing to water some shrubbery recently planted, the defendant's off-duty employee, a minor, drove with his girlfriend upon the premises of the dairy farm in his father's automobile to purchase some cold drinks from a vending machine located at the dairy barn. The dairy streets and barn are open to the public for the viewing of the operation of the dairy. The minor employee and his parents, also employees of the defendant, reside on property owned by the defendant-dairy.
Upon arrival at the barn, the employee backed his father's automobile to within a few feet of the barn steps, at which time Mr. Burke informed the employee that he was about to start the sprinklers to water the shrubbery, and that if the car were left there, it would be wet. The employee thereupon hurried to and from the vending machine. Mrs. Burke was starting to ascend the barn's concrete steps located immediately to the rear of the automobile, where she paused for a moment to speak to her husband, Mr. Burke. In preparing to drive away from the barn, the employee "revved up" the engine of the automobile and mistakenly engaged the car's transmission in reverse, whereupon the car was propelled rapidly backwards, pinning Mrs. Burke's legs between the car's rear bumper and the concrete steps, injuring and disfiguring her.
At trial the jury returned a verdict in favor of the Burkes and against the defendant-dairy. Hence this appeal.
The primary question presented by this appeal is whether and to what extent a master is liable for the negligent acts of a servant which are unconnected with the servant's duties as a servant and outside the scope and course of employment.
*200 The general rule is that the relationship of master and servant does not render the master liable for the torts of the servant unless connected with his duties as such servant, or within the scope or course of his employment. However, set forth in 2 Restatement of Torts, Section 317, is a related exception to the general rule, which is as follows:
"Section 317. Duty of Master to Control Conduct of Servant.
A master is under a duty to exercise reasonable care so to control his servant while acting outside the course of his employment as to prevent him from intentionally harming others or from so conducting himself as to create an unreasonable risk of bodily harm to them if
"(a) the servant
(i) is upon the premises in the possession of the master or upon which the servant is privileged to enter only as his servant, or
(ii) is using a chattel of the master, and
"(b) the master
(i) knows or has reason to know that he has the ability to control his servant, and
(ii) knows or should know of the necessity and opportunity for exercising such control."
The foregoing section of the Restatement of Torts appears to have developed from Fletcher v. Baltimore & Potomac Railroad Co., 1897, 168 U.S. 135, 18 S.Ct. 35, 42 L.Ed. 411, and has been construed and applied in numerous cases in the United States, e.g., Ford v. Grand Union Company, 1935, 268 N.Y. 243, 197 N.E. 266; and Dincher v. Great Atlantic & Pacific Tea Co., 1947, 356 Pa. 151, 51 A.2d 710. This section of the Restatement was also approved by the Supreme Court of Florida in Mallory v. O'Neil, Fla. 1954, 69 So.2d 313.
In Ford v. Grand Union Company, supra, the court in determining the duty of the master to control his servant on his business premises stated:
"The duty, if any, is certainly not absolute. The owner of a property not inherently dangerous who does not knowingly permit others to put the property to a dangerous use, is not subject to any absolute duty to prevent unauthorized persons from putting it to a dangerous use. Here there must be at least notice that a dangerous use is threatened, and perhaps acquiescence in such use. Again, where there is no notice that an employee is in the habit of acting in a manner dangerous to others, there is no duty to control the actions of the employee outside the scope of his employment. Such limitations, at least, are dictated by fundamental principles of tort liability. Without them there would be no room for the doctrine that a person is responsible only for the result of his own fault or the fault of his servants, acting within the scope of their employment.
"In some cases, nevertheless, the possessor of property used for business has been held liable for failure to control his servants, though acting outside the scope of their employment or other persons permitted to come upon or use such property. It is to be noted, however, that even in these cases the courts held that the duty was not absolute, but relative. It arises only where, from the nature of the authorized use of property or from a course of conduct of visitors or of employees employed upon or in connection with the property, the possessor has notice that the use of his property, by persons acting without his authority but whom he could control, may cause danger to members of the general public. When such duty exists, it is limited to the exercise of skill and care commensurate to the danger which may reasonably be anticipated.
"* * *
"Where danger cannot reasonably be anticipated, there is no duty to guard *201 against it; after knowledge or notice of danger is present, there must be reasonable opportunity to guard against the danger. * * *"
We glean from Grand Union that to impose liability it is necessary to show that: (a) the employee is engaging in or shows a propensity to engage in conduct that is in its nature dangerous to members of the general public; (b) the employer has notice that the employee is acting or in all probability will act in a manner dangerous to other persons; (c) the employer has the ability to control the employee such as to substantially reduce the probability of harm to other persons; and (d) the other person must in fact have been injured by an act of the employee which could reasonably have been anticipated by the employer and which by exercising due diligence and authority over the employee the employer might reasonably have prevented.
Turning now to the instant case as relating to the above elements, as to (a) we note that the employee was first hired by the dairy when he was fifteen years of age and permitted by the superintendent to operate an automobile on the dairy premises even though the employee did not possess a valid driver's license. From the beginning the employee took advantage of the sparsely traveled dirt roads on the dairy and established himself as a hot rod driver by his propensity to "scratch off" and "fishtail" up and down the dairy roads, constituting a continuing menace to others who happened to be on the dairy farm for business or other reasons. He was more than an occasional driver on the dairy roads, since his home, friends and work were at the dairy and as a result, he was almost always on the property, had his own automobile and the use of his father's vehicle. A number of residents of the dairy farm testified to having been concerned that one of their children would be injured by his recklessness. Clearly, from the above the requirement of the first element is satisfied.
As to the second element, the superintendent took note of the employee's recklessness and on two separate occasions warned him to drive more reasonably. When these warnings proved to be futile, the superintendent warned the young employee's father that the boy would be discharged if he did not quit driving, at which time the employee's driving was discontinued. The employee did not drive on the dairy premises thereafter until he obtained a valid driver's license, after which the superintendent again permitted the employee to resume driving on the premises "as long as he would drive right." It wasn't long before dairy employees who lived on the premises again complained to the superintendent about the youth's reckless manner of driving. Again the superintendent spoke to the boy, but these warnings were ineffectual and at the scene of the accident where Mrs. Burke, the plaintiff, was injured, the superintendent made the statement, "I have told that boy time and time again, I was afraid something like this might happen." Thus the superintendent was well aware of the dangerous situation, and had sufficient notice, satisfying the second element.
As to the third element of the superintendent's ability to control the employee and to substantially reduce the probability of harm to others, we find the boy still under his father's control, and the jobs of both were at stake. The superintendent had threatened to discharge the young employee from his job unless he ceased driving on the premises. This threat proved to be effectual. On subsequent occasions the superintendent found it necessary to speak with the employee about his recklessness, but it was obvious to the superintendent and to others on the farm that these conversations did no good. The youth was never again threatened with stronger sanctions.
As to the fourth element, it was the responsibility of the superintendent to supervise the dairy streets and to make them safe for those who traversed them. The dairy property was posted as open to the public, *202 and a distinct possibility existed that the public, dairy residents or employees might be seriously injured by the youth if he were allowed to continue his driving habits. Nevertheless, the superintendent failed to take effective measures to mitigate the danger posed by this young employee. The superintendent could have prohibited the youth from driving on the premises, or he could have taken other steps to see that the employee drove more safely. Either would have substantially reduced the probability of the accident and the injury, or would at least have discharged the duty of the employer to attempt to control the employee's dangerous activities.
For the foregoing reasons and from our examination of the record we conclude there was substantial competent evidence to support the jury's verdict. Accordingly, the judgment is affirmed.
Affirmed.
REED, J., concurs.
OWEN, J., dissents.