386 So.2d 1238 (1980)
Lee WILLIAMS, Appellant,
v.
FEATHER SOUND, INC., a Florida Corporation, Appellee.
No. 79-1780.
District Court of Appeal of Florida, Second District.
July 16, 1980.
Rehearing Denied August 27, 1980.
James Stewart and Eric S. Ruff of Law Offices of William Randolph Klein, Sarasota, for appellant.
W. Robert Mann and Donald Paul Greiwe of Mann & Fay, Chartered, Bradenton, for appellee.
GRIMES, Judge.
This appeal from a summary judgment in favor of appellee Feather Sound, Inc., involves an aspect of the doctrine of negligent hiring.
*1239 Lee Williams brought suit against Feather Sound for damages suffered as a result of an assault upon her by James Carter, one of Feather Sound's employees. The depositions on file reflect that on April 5, 1978, Carter applied for a job at Feather Sound, a developer and manager of condominiums and residential home sites. In answering a newspaper advertisement, Carter initially applied for a laborer's position involving outside maintenance duties such as mowing, weeding and edging. Daryl Rejko, who was a golf course superintendent for Feather Sound, interviewed Carter. Rejko had no instructions concerning how he should interview job applicants, but Feather Sound's bookkeeping department had provided him with an application form. The form did not contain a request for information concerning the applicant's past criminal or psychiatric treatment history. Rejko did not ask Carter whether he had been arrested, convicted or placed on probation, and Carter did not volunteer any information on this point. Rejko further testified that while he had authority to make long distance telephone calls to check references given by job applicants, he did not check any of the three references Carter gave him. Rejko also did not contact either of the two prior employers Carter listed on his job application form.
After performing outside labor for Feather Sound for a period of three weeks, Carter's duties changed as a result of a departmental transfer. Thereafter, Carter was assigned work inside the condominium townhouse units under a new supervisor who was in charge of interior maintenance of townhouses. Carter began to wear a utility belt holding screwdrivers, a hammer, a knife and other related items. He had access to passkeys to the townhouses and permission to use them in order to gain entrance so as to make necessary repairs.
On April 27, 1978, Carter appeared at the door of a condominium unit where Miss Williams was a guest and alone at the time. Upon hearing the doorbell ring, Miss Williams saw Carter standing outside with his utility belt on. He told her that he was to check on the apartment and make sure the screens were intact and the windows clean. Miss Williams admitted him to the apartment where he worked for about twenty minutes and then left without incident. Four days later, Carter went back to the same unit and, according to him, entered through a back door having found it ajar. Miss Williams claimed, however, that Carter said he had entered using a passkey. In any event, Carter assaulted Miss Williams by placing his hands upon her and forcing her to the floor. She claimed he put a knife to her throat, but he denied it.
Upon investigation, it was discovered that in August, 1971, the state had charged Carter with breaking and entering a residence in Bardenton, and assault to commit murder in the second degree. Carter pled guilty to these charges, and the court placed him on seven years probation. Two and one-half months of that time he spent at G. Pierce Wood Memorial Hospital in Arcadia for psychiatric care. In early 1978, prior to April, Carter was arrested for "night prowling". He also pled guilty to that charge and received a fine. There is no indication that Feather Sound had any knowledge of Carter's criminal or psychiatric record.
In her appeal, Miss Williams does not suggest that Carter was acting within the scope of his employment at Feather Sound. Rather, she contends that Feather Sound was negligent in employing Carter as a workman having access to the townhouse units without first checking his background. She argues that had Feather Sound made such an inquiry, it would have become evident that Carter was a threat to the safety of the occupants of the townhouses.
Most jurisdictions, including Florida,[1] recognize that independent of the doctrine of respondeat superior, an employer is liable for the willful tort of his employee *1240 committed against a third person if he knew or should have known that the employee was a threat to others.[2] Many of these cases involve situations in which the employer was aware of the employee's propensity for violence prior to the time that he committed the tortious assault.[3] The more difficult question, which this case presents, is what, if any, responsibility does the employer have to try to learn pertinent facts concerning his employee's character. Some courts hold the employer chargeable with the knowledge that he could have obtained upon reasonable investigation,[4] while others seem to hold that an employer is only responsible for his actual prior knowledge of the employee's propensity for violence.[5] The latter view appears to put a premium upon failing to make any inquiry whatsoever.
The rule in Florida is not altogether clear. In one case, the supreme court reversed the dismissal of a complaint which alleged that an apartment house owner was liable for an assault by his caretaker upon one of the occupants because of "knowingly keeping a dangerous servant on the premises which defendant knew or should have known was dangerous and incompetent and liable to do harm to the tenants."[6] Yet, a few months later, in exonerating a common carrier from liability for an assault by one of its employees while he was in the plaintiff's house for the purpose of moving household goods, the court observed that this was "not a case where the corporation knew that employee was a dangerous person or was chargeable with notice or knowledge of any fact that he was a dangerous person and might attempt to commit such an assault."[7]
We think that in analyzing the employer's responsibility to check out an applicant's background, it is necessary to consider the type of work to be done by the prospective employee. In this case, when Rejko hired Carter to do outside work on the grounds of Feather Sound, during which he would have only incidental contact with the tenants, we cannot see how Rejko had any obligation on behalf of his company to make an independent inquiry concerning Carter's past if he did not want to. However, in view of the fact that Carter had only been employed for three weeks, we believe that Feather Sound had a duty to make a reasonable inquiry about his background before transferring him to inside work and giving him access to the townhouse passkeys. If an employer wishes to give an employee the indicia of authority to enter into the living quarters of others, it has the responsibility of first making some inquiry with respect to whether it is safe to do so. Feather Sound did not carry out this responsibility. It made no effort to contact prior employers, and it did not seek advice from Carter's references.[8] Therefore, the *1241 court should not have granted a summary judgment in its favor.[9]
When this case returns for trial, it will first be necessary to determine what kind of inquiry about Carter would have been reasonable under the circumstances and what information Feather Sound would likely have obtained had it made such an inquiry. Evidence bearing upon the difficulty or cost of obtaining such information will be relevant. Then, the ultimate question of liability to be decided will be whether it was reasonable for Feather Sound to permit Carter to perform his inside job in light of the information about him which Feather Sound should have known. Pertinent to this consideration is the fact that there are many persons in Florida with prior criminal records who are now good citizens. To say that an employer can never hire a person with a criminal record at the risk of being held liable for his tortious assault flies in the face of the premise that society must make a reasonable effort to rehabilitate those who have gone astray. At this point, we hold only that when Feather Sound permitted Carter to have access to the townhouses, Feather Sound was chargeable with such information concerning his background as it could have obtained upon reasonable inquiry.
REVERSED.
SCHEB, C.J., and CAMPBELL, J., concur.
NOTES
[1] Texas Skaggs, Inc. v. Joannides, 372 So.2d 985 (Fla. 2d DCA 1979); McArthur Jersey Farm Dairy, Inc. v. Burke, 240 So.2d 198 (Fla. 4th DCA 1970).
[2] Annot., 34 A.L.R.2d 372, 390 (1954).
[3] E.g., Svacek v. Shelley, 359 P.2d 127 (Alaska 1961); Freeman v. Bell, 366 So.2d 197 (La. App. 1978).
[4] E.g., Hipp v. Hospital Auth. of Marietta, 104 Ga. App. 174, 121 S.E.2d 273 (1961); Estate of Arrington v. Fields, 578 S.W.2d 173 (Tex.Civ. App. 1979).
[5] E.g., Bradley v. Stevens, 329 Mich. 556, 46 N.W.2d 382 (1951); Stevens v. Lankard, 31 A.D.2d 602, 297 N.Y.S.2d 686 (1968).
[6] Mallory v. O'Neil, 69 So.2d 313, 315 (Fla. 1954).
[7] Riddle v. Aero Mayflower Transit Co., 73 So.2d 71, 71 (Fla. 1954).
[8] On the other hand, we reject Miss Williams' contention that, as a matter of law, Feather Sound had to check with law enforcement agencies about Carter's criminal record. While this may have been prudent, we think the better rule is stated in Evans v. Morsell, 284 Md. 160, 395 A.2d 480 (1978), in which the Maryland court said:

[T]he majority of courts flatly reject the contention of the plaintiff in the present case, namely that where an employee is to regularly deal with the public, an inquiry into a possible criminal record is required. On the contrary, the cases hold if the employer makes adequate inquiry or otherwise has a sufficient basis to rely on the employee, there is no need to inquire about a possible criminal record.
395 A.2d at 484.
[9] Of course, if there were nothing suspect in Carter's background, we would affirm the summary judgment in spite of Feather Sound's failure to make inquiry.