492 So.2d 435 (1986)
Lee J. GARCIA, Appellant,
v.
Richard J. DUFFY and Joule Yacht Transport Company, Appellee.
No. 85-1825.
District Court of Appeal of Florida, Second District.
July 30, 1986.
*437 John N. Samaha, St. Petersburg, for appellant.
Nelly N. Khouzam of Fowler, White, Gillen, Boggs, Villareal & Banker, P.A., St. Petersburg, for appellee.
SCHOONOVER, Judge.
In an action for damages against Joule Yacht Company (defendant employer), Lee J. Garcia (plaintiff), appeals from a final order dismissing his second amended complaint with prejudice. We find that the facts alleged in the second amended complaint fail to establish either that the defendant employer owed a duty to the plaintiff to exercise reasonable care in hiring and retaining safe and competent employees or that the defendant employer breached such a duty. We, therefore, affirm.
After an initial and first amended complaint were dismissed for failure to state a cause of action, the plaintiff filed a second amended complaint alleging that the defendant employed Richard J. Duffy (employee) and that the employee's duties included driving a truck for the delivery of boats. The defendant employer allowed the employee to keep a dog in the delivery truck to provide companionship and to deter others from boarding the truck. On January 13, 1983, the plaintiff accidently struck and killed the dog when it darted in front of a vehicle he was driving.
The complaint further alleged that the accident occurred in the vicinity of the defendant employer's premises and that the employee, while on the premises owned, possessed, and controlled by the defendant employer, became enraged upon witnessing the plaintiff strike and kill his dog. As the plaintiff disembarked from the vehicle he had been driving, the employee rushed toward him and struck him in the face, causing the plaintiff to temporarily lose consciousness.
The employee was alleged to have admitted, in a deposition, to being charged with assault and battery in the 1960's and convicted of night-prowling in the 1970's. The defendant employer was alleged to have stated in answers to interrogatories that it conducted a background investigation of prospective employees consisting of inquiries of past employers.
In addition to bringing a cause of action against the employee personally, the plaintiff brought an action for damages against the employer. Although the second amended complaint is less than explicit regarding the theories under which the plaintiff sought to hold the defendant employer liable, it appears the allegations attempted to establish liability under the doctrine of respondeat superior and the theory of negligent hiring and retention. The defendant employer filed a motion to dismiss the second amended complaint for failure to state a cause of action. When the trial court granted the motion and dismissed the action with prejudice, the plaintiff filed a timely notice of appeal.
For purposes of deciding whether the trial court erred in granting the defendant employer's motion to dismiss, we assume that all facts alleged in the complaint are true and decide the issue on questions of law only. Connolly v. Sebeco, 89 So.2d 482 (Fla. 1956). Plaintiff's counsel on appeal concedes that damages are not being sought under the doctrine of respondeat superior; nevertheless, we note that the second amended complaint fails to allege facts sufficient to state a cause of action *438 under that doctrine. It is where the employee's acts are committed within the scope or course of his employment that an employer may be liable under the doctrine of respondeat superior. See Thurston v. Morrison, 141 So.2d 291 (Fla. 2d DCA 1962); Friedman v. Mutual Broadcasting System, Inc., 380 So.2d 1313 (Fla. 3d DCA), cert. denied, 388 So.2d 1112 (Fla. 1980). Although the plaintiff alleged, in count I, that the employee was on duty at the time of the attack and, in count II, that the employee witnessed the accident and became enraged while on the defendant employer's premises, these statements are insufficient to allege that the attack was committed within the scope or course of employment.
The plaintiff's second theory of liability, negligent hiring or retention, allows for recovery against an employer for acts of an employee committed outside the scope and course of employment. This cause of action in Florida had its inception in Mallory v. O'Neil, 69 So.2d 313 (Fla. 1954), a case in which the supreme court approved a doctrine that was emerging from other jurisdictions and was approved in section 317, Restatement (Second) of Torts. According to the supreme court, the rule emerging from other jurisdictions allowed for recovery based on the negligence of an employer who knowingly kept a dangerous employee on the premises, and the employer was held liable for an employee's acts committed outside the scope of employment, whether willful, malicious, or negligent, where the acts trespassed against the rights of someone legally on the employer's premises.[1] Section 317, Restatement (Second) of Torts, set forth the rule as the employer's duty to exercise reasonable care to control his servant while acting outside the course of his employment, in order to prevent the employee from intentionally harming others and from creating an unreasonable risk of bodily harm to them.[2] The rule has continued to evolve and is now commonly referred to as an employer's liability for negligent hiring and employment, see, e.g., Petrick v. New Hampshire Insurance Co., 379 So.2d 1287 (Fla. 1st DCA 1979), cert. denied, 400 So.2d 8 (Fla. 1981); Abbott v. Payne, 457 So.2d 1156 (Fla. 4th DCA 1984); see also, 379 So.2d 1287, or negligent hiring and retention. See, e.g., Texas Scaggs, Inc. v. Joannides, 372 So.2d 985 (Fla. 2d DCA 1979), cert. denied, 381 So.2d 767 (Fla. 1980).
The principal difference between negligent hiring and negligent retention as bases for employer liability is the time at which the employer is charged with knowledge of the employee's unfitness. Negligent hiring occurs when, prior to the time the employee is actually hired, the employer knew or should have known of the employee's unfitness, and the issue of liability primarily focuses upon the adequacy of the employer's pre-employment investigation into the employee's background. See, e.g., Williams v. Feathersound, Inc., 386 So.2d 1238 (Fla. 2d DCA 1980), petition for review denied, 392 So.2d 1374 (1981); Abbott. Negligent retention, on the other hand, occurs when, during the course of employment, the employer becomes aware or should have become aware of problems with an employee that indicated his unfitness, and the employer fails to take further *439 action such as investigating, discharge, or reassignment. See, e.g., McCrink v. City of New York, 296 N.Y. 99, 71 N.E.2d 419 (1947); Fernelius v. Pierce, 22 Cal.2d 226, 138 P.2d 12 (1943); see also, Riddle v. Aero Mayflower Transit Co., 73 So.2d 71 (Fla. 1954).
Once liability began to be imposed on employers for acts of their employees outside the scope of employment, the courts were faced with the necessity of finding some rational basis for limiting the boundaries of that liability; otherwise, an employer would be an absolute guarantor and strictly liable for any acts committed by his employee against any person under any circumstances. Such unrestricted liability would be an intolerable and unfair burden on employers. Only when an employer has somehow been responsible for bringing a third person into contact with an employee, whom the employer knows or should have known is predisposed to committing a wrong under circumstances that create an opportunity or enticement to commit such a wrong, should the law impose liability on the employer. See Restatement (Second) of Torts § 302B(D); Welch Manufacturing v. Pinkerton's, Inc., 474 A.2d 436 (R.I. 1984).
As is often the case with legal concepts, the theories imposing employer liability for negligent hiring and retention have developed on a case-by-case basis. In order to decide this particular case, we found it necessary to explore two principal issues: (1) to whom does an employer owe a duty to exercise reasonable care in hiring and retaining safe and competent employees and (2) how is that duty breached? We set forth our findings in order to provide some guidance in the area.
In answering the first question, we note that one of the fundamental elements of actionable negligence under any theory is the existence of a duty owed to the person injured by the person charged with negligence. Belmar, Inc. v. Dixie Building Maintenance, Inc., 226 So.2d 280 (Fla. 3d DCA 1969); see also, Heps v. Burdine, 69 So.2d 340 (Fla. 1954). The plaintiff must demonstrate that he is within the zone of risks that are reasonably foreseeable by the defendant. Crislip v. Holland, 401 So.2d 1115 (Fla. 4th DCA), petition for review denied, 411 So.2d 380 (Fla. 1981); Palsgraf v. Long Island Railroad Co., 248 N.Y. 339, 162 N.E. 99 (1928).
In Mallory, the supreme court applied a rule extending a duty to anyone legally on the employer's premises whose rights were trespassed against by the employee. The plaintiff, however, need not be on the employer's premises, as evidenced by the decision in Abbott, where a duty was found to be owed by an employer to one of its customers, where the employer knew that its employee would have free and independent access to its customer's home for the purpose of providing pest control services.
As far as people other than the employer's customers, invitees, and licensees are concerned, the case of Belmar, Inc. addressed the duty owed to a plaintiff robbed by employees who had gained access to the plaintiff's premises when cleaning the premises of a third party who had a contract with their employer. The court held that the complaint failed to allege the existence of a duty because the contract was not between the employer and plaintiff, and because an employer does not have a duty to guard against risks that are not reasonably foreseeable, such as the commission of a criminal act by its employees. We disagree with the court's reasoning to the extent it required privity of contract between the plaintiff and defendant employer. We believe that the better rule was stated by this court in Navajo Circle, Inc. v. Development Concepts, 373 So.2d 689 (Fla. 2d DCA 1979):
The duty owed by a defendant to a plaintiff may have sprung from a contractual promise made to another; however the duty sued on in a negligence action is not the contractual promise but the duty to use reasonable care in affirmatively performing that promise... . Whether a defendant's duty to use reasonable care extends to a plaintiff not a party to the contract is determined by *440 whether that plaintiff and defendant are in a relationship in which the defendant has a duty imposed by law to avoid harm to the plaintiff.
373 So.2d at 691. Even in cases where a contract is not involved, there must be some relationship or nexus from which flows a legal duty, express or implied, on the part of the defendant toward the particular person injured. See Navajo Circle, Inc.; Drady v. Hillsborough County Aviation Authority, 193 So.2d 201 (Fla. 2d DCA 1967), cert. denied, 210 So.2d 223 (Fla. 1968); Crislip. In connection with a cause of action for negligent hiring or retention, the nexus arises out of the relationship between the employment in question and the particular plaintiff.
A thorough discussion of this relationship as well as the development and scope of negligent hiring theories can be found in Note, The Responsibility of Employers for the Action of Their Employees: The Negligent Hiring Theory of Liability, 53 CHI.-KENT L.REV. 717 (1977). The author of the note set forth three elements which must be present in order for a duty to arise to the plaintiff: (1) both the plaintiff and the employee have been in places where each had a right to be when the wrongful act occurred; (2) the plaintiff met the employee as the direct consequence of the employment; and (3) the employer would receive some benefit, even if only a potential or indirect benefit, from the meeting of the employee and plaintiff had the wrongful act not occurred.
We agree that in any situation where all three of these elements are present, the required nexus between the employment and the plaintiff would be so obvious that there could be little question that the employer owed a duty to the plaintiff to hire and retain safe and competent employees. On the other hand, we recognize that an employer cannot necessarily escape liability because one of the three elements is not present. For instance, the first criterion is inconsistent with our decision in Williams, because the employee in that case, although possessed of a passkey, did not have the right to be in the tenant's apartment when the wrongful act occurred, but a duty was found owing to the plaintiff-tenant. The third criterion is inconsistent with the fourth district's finding in McArthur Jersey Farm Dairy v. Burke, 240 So.2d 198 (Fla. 4th DCA 1970), that an employer was liable for the injuries sustained by the plaintiff when an off-duty employee, a known reckless driver, backed into the plaintiff on the employer's premises. The plaintiff had been hired by the employer to plant shrubs on the employer's property. We believe that the duty is best described as a legal duty, arising out of the relationship between the employment in question and the particular plaintiff, owed to a plaintiff who is within the zone of foreseeable risks created by the employment.
Once it is established that the employer owed a duty to the particular plaintiff, the plaintiff must next allege that the employer breached that duty. This element concerns the standard of care required of the employer. In general, the test is whether the employer exercised the level of care which, under all the circumstances, the reasonably prudent man would exercise in choosing or retaining an employee for the particular duties to be performed. 4F Personal Injury: Actions, Defenses, Damages Masters and Servants § 1.04 (1982); see also, Jacksonville Journal Co. v. Gilreath, 104 So.2d 865 (Fla. 1st DCA 1958); Restatement (Second) of Agency § 213(b) and Restatement (Second) of Torts § 307.
In order to allege facts sufficient to show breach of a duty to exercise reasonable care in hiring, the plaintiff generally must allege facts sufficient to show that (1) the employer was required to make an appropriate investigation of the employee and failed to do so; (2) an appropriate investigation would have revealed the unsuitability of the employee for the particular duty to be performed or for employment in general; and (3) it was unreasonable for the employer to hire the employee in light of the information he knew or should have known. See, e.g., Williams; Nazareth v. Herndon Ambulance Service, Inc., 467 So.2d 1076 *441 (Fla. 5th DCA 1985); see also, DeJesus v. Jefferson Stores, Inc., 383 So.2d 274 (Fla. 3d DCA 1980).
Whether an investigation was required, and if so, which factors are to be considered in determining whether the investigation was reasonable or appropriate, are two questions that will vary with the circumstances of each case. In Williams, this court stated that in analyzing the employer's responsibility to check out an applicant's background, it is necessary to consider the type of work to be done by the prospective employee. If, for instance, an employer wishes to give an employee the indicia of authority to enter into the living quarters of others, the employer has the responsibility to first investigate as to the safety of such action. Williams; Abbott. An appropriate investigation in that instance would include contacting the employee's references and prior employers for information. Williams; Abbott. Evidence bearing upon the difficulty or cost of obtaining such information would be relevant in determining the reasonableness of the inquiry. Williams.
Where the employee's duties include outside work with only incidental contact with others, this court in Williams found no obligation on the part of the employer to make an independent inquiry into an employee's past. We do not interpret this to mean that where outside work is contemplated, there can never be circumstances indicating the need for independent inquiry. Rather, where the intended duties will require only incidental contact with others, the requisite level of inquiry is correspondingly reduced so that obtaining past employment information and personal data during the initial interview may be sufficient.
Even where the circumstances dictate the need for some independent inquiry, however, there is no requirement, as a matter of law, that the employer make an inquiry with law enforcement agencies about an employee's possible criminal record, even where the employee is to regularly deal with the public. Evans v. Morsell, 284 Md. 160, 395 A.2d 480 (1978), approved in Williams at 1240 n. 8. If the employer makes adequate inquiry or otherwise has a sufficient basis to rely on the employee, there is no need to inquire about a possible criminal record. Morsell; Williams. Even actual knowledge of an employee's criminal record does not establish, as a matter of law, the employer's negligence in hiring him. Hersh v. Kentfield Builders, Inc., 385 Mich. 410, 189 N.W.2d 286 (1971); see also, Williams. As this court stated in Williams, to say an employer can never hire a person with a criminal record at the risk of being held liable for the employee's tortious assault, "flies in the face of the premise that society must make a reasonable effort to rehabilitate those who have gone astray." 368 So.2d at 1241.
In order to allege facts sufficient to show breach of the duty to exercise reasonable care in retention of an employee, the plaintiff must allege facts sufficient to show that once an employer received active or constructive notice of problems with an employee's fitness, it was unreasonable for the employer not to investigate or take corrective action such as discharge or reassignment. See Fernelius; McCrink. The factors constituting notice, employee fitness, and the type of action reasonably required of the employer will also vary with the circumstances of each case. Similar to the area of negligent hiring cases, the negligence of an employer's acts or omissions upon actual or constructive notice of an employee's criminal record or activity will also be a question of fact. For example, an employer who learns of an employee's conviction for petit theft cannot be deemed liable, on the basis of negligent retention upon constructive or actual notice of that crime, for the employee's subsequent rape of a customer.
In applying these principles to the instant case, we now turn to the sufficiency of the allegations set forth in the plaintiff's second amended complaint. The complaint alleged that "subsequent" to the employment *442 of the employee, the employer knew or should have known of the employee's dangerous character. As the basis for the employer's actual or constructive knowledge, the plaintiff alleges that the employee had been charged with assault and battery and had been convicted of the crime of night-prowling. The employer was alleged to have breached his duty by failing to make, in light of the employee's daily contact with the public, an inquiry into the employee's possible criminal background. The plaintiff alleged that a proper inquiry of previous employers or other sources should have revealed the employee's criminal record.
Because these allegations concern the duty to investigate prior to hiring, we construe them as intended to state a cause of action for negligent hiring, in spite of the plaintiff's initial allegation that "subsequent" to the employment, the employer knew or should have known of the employee's dangerous character. We construe, because of their alleged occurrence subsequent to hiring, as intended to state a cause of action for negligent retention, the plaintiff's allegations that the employer was negligent in not discovering the employee's dangerous character and in allowing the employee to use his dog as a deterrent in that it was foreseeable that the dog would eventually injure someone.
We hold that the allegations fail to state a cause of action for either negligent hiring or retention because they failed to establish that the employer owed a legal duty to the plaintiff to exercise reasonable care in hiring and retaining employees. There was no connection between the employment and the plaintiff from which flowed a legal duty on the part of the employer to the plaintiff, and the plaintiff was not within the zone of foreseeable risk created by the employment. The employee and plaintiff met only because the employee's dog was accidently struck by the vehicle the plaintiff was driving and because the employee witnessed the incident while on the employer's premises. The plaintiff was neither an actual nor potential customer, licensee, or invitee of the employer.
Even if it had been established that the employer owed a duty to this plaintiff, the plaintiff failed to allege facts sufficient to show that the employer breached that duty. The employee was hired to do outside work consisting of driving a truck to deliver boats. Although he had regular contact with the public, the nature of the contact can best be described as incidental. The employer's practice of inquiring of past employers listed on employment applications easily met the standard of care required for this kind of work.
The plaintiff's allegation that the employer had a duty to inquire whether its employee had a possible criminal background is clearly erroneous. The plaintiff did not allege that anything on the employee's application would have put the employer on notice of the employee's criminal record. As we stated previously, there is no requirement, as a matter of law, that the employer make an inquiry with law enforcement agencies about an employee's possible criminal record. Williams. This is true even where the circumstances dictate the need for some independent inquiry in the form of checking with past employees and references because the level of contact with the public will be high. Here, the level of contact with the public was incidental to the employee's job. Even had the employer known of the employee's conviction for night-prowling or his assault-and-battery charge that had occurred almost twenty years earlier, we do not consider that this knowledge would have made it foreseeable that the employee would react to his dog's death by physically attacking a person who accidentally caused the dog's death. As a practical matter, adequate means for "determining (such) unknown and unusual ... inclinations of an employee" simply are not available. Riddle.
The employer also did not breach any duty to exercise reasonable care in retaining employees. Nothing was alleged to have occurred subsequent to hiring the employee that would have placed the employer *443 on actual or constructive notice of the employee's "dangerous character." Allowing an employee to use his dog to deter others from boarding a delivery truck is not a proper basis for alleging negligent retention of an employee, and furthermore, did not cause the plaintiff in this case to be injured. Although use of the dog as a deterrent arguably made it foreseeable that the dog would eventually injure someone, the dog did not attack the plaintiff.
As we have determined there was no duty owed by the defendant to the plaintiff, we affirm the trial court's dismissal of the second amended complaint for failure to state a cause of action.
AFFIRMED.
GRIMES, A.C.J., and SANDERLIN, J., concur.
NOTES
[1] See, e.g., Cressy v. Republic Creosoting Co., 108 Minn. 349, 122 N.W. 484 (1909); Allertz v. Hankins, 102 Neb. 202, 166 N.W. 608 (1918); Hall v. Smathers, 240 N.Y. 486, 148 N.E. 654 (1925); Livingston v. Gennert, 165 N.Y.S. 989 (1917), cited in Mallory at 69 So.2d 315.
[2] Restatement (Second) of Torts, section 317, provides as follows:

Section 317. Duty of Master to Control Conduct of Servant.
A master is under a duty to exercise reasonable care to control his servant while acting outside the course of his employment as to prevent him from intentionally harming others or from so conducting himself as to create an unreasonable risk of bodily harm to them if
(a) the servant
(i) is upon the premises in the possession of the master or upon which the servant is privileged to enter only as his servant, or
(ii) is using a chattel of the master, and
(b) the master
(i) knows or has reason to know that he has the ability to control the servant, and
(ii) knows or should know of the necessity and opportunity for exercising such control.