Joyce **WITOVER**, Plaintiff,

v.

**CELEBRITY CRUISES, INC.**, Defendant.

**CASE NO. 15–21661–CIV– LENARD/GOODMAN**

United States District Court, S.D. Florida.

Signed 02/04/2016

Philip Dixon Parrish, Philip D. Parrish PA, Miami, FL, Mark Richard Hanson, Tomberg, Hanson & Halper, LLC, Boynton Beach, FL, for Plaintiff.

Darren Wayne Friedman, Jeffrey Eric Foreman, Jenna Francine Gushue, Fore-

man Friedman, PA, Miami, FL, for Defendant.

***ORDER GRANTING IN PART AND DENYING IN PART DEFENDANT'S MOTION TO DISMISS (D.E. 10) AND DISMISSING COUNT 4 WITH PREJUDICE***

JOAN A. LENARD, UNITED STATES DISTRICT JUDGE

THIS CAUSE is before the Court on Defendant Celebrity Cruises, Inc.'s ("Celebrity") Motion to Dismiss Plaintiff's Complaint (D.E. 10), filed June 16, 2015. Plaintiff filed her Response in Opposition on July 16, 2015, (D.E. 20), to which Celebrity replied on July 27, 2015, (D.E. 22). Plaintiff also filed a Notice of Supplemental Authority (D.E. 32) on December 15, 2015. Upon review of the Motion, the Response, the Reply, the Notice of Supplemental Authority and the record, the Court finds as follows:

## I. BACKGROUND

On April 24, 2014, Plaintiff Joyce Witover boarded the Celebrity Constellation for a transatlantic cruise departing from Fort Lauderdale, Florida and arriving in Amsterdam, Netherlands. (D.E. 1 at ¶ 7.) Plaintiff requires the assistance of a scooter to ambulate and informed Celebrity of her special needs before and after boarding the ship. (*Id.* at ¶ 11.) As part of her cruise, Plaintiff discussed with Celebrity's representatives the possibility of booking shore excursions that accommodated her special needs. Celebrity allegedly advertised certain excursions which were "completely wheel-chair accessible," including an accessible excursion in Lisbon, Portu-

gal. (*Id.* at ¶ 12 and 15.) Based on Celebrity's purported representation that *"their* excursion would satisfy Plaintiff's special needs," Plaintiff purchased and participated in the accessible or "easy" excursion to Lisbon.[1] (*Id.* at ¶ 16.) (Emphasis added.) On or about May 3, 2014, the Plaintiff travelled with her husband in a transport bus to Lisbon. While the Plaintiff was disembarking using the bus's ramp, the tour operator "turned the handle bar of Plaintiff's scooter causing [her] to fall to the ground and the scooter to fall on top of [her], causing great bodily harm." (*Id.* at ¶ 18.)

Following her accident in Lisbon, Plaintiff filed the instant suit. (*Id.*) Plaintiff's Complaint raises five potential claims against Celebrity: (1) breach of a non-delegable duty; (2) negligence; (3) negligent selection of a tour operator; (4) directly liability for negligence of the tour guide; (5) vicarious liability for negligence of tour guide (i.E. actual or apparent agency). (*Id.*) On June 16, 2015, Celebrity filed its Motion to Dismiss Plaintiff's Complaint in its entirety, arguing that: (1) Count 1 fails to state a claim because a cruise ship passenger "may not bring a breach of contract claim against a cruise line 'unless there is an express provision in the contract of carriage guaranteeing safe passage,'" (D.E. 10 at 3) (citing *Doonan v. Carnival Corp.,* 404 F.Supp.2d 1367, 1372–73 (S.D.Fla.2005); (2) Count 2 fails to state a claim because Celebrity is not required to "ensure the safety of its passengers on a shore excursion ... [or] supervise or monitor shore excursion or maintain them in a reasonably safe condition free of dangers and hazards." (*Id.* at 6.) Rather, Celebrity was only required to warn Plaintiff of dangers which it knew or reasonably should

---

1. [missing text].

have known about—and Plaintiff has failed to raise any factual allegations that Celebrity was aware or should have been aware of the danger which caused her injuries. (*Id.*); (3) Count 3 fails to state a claim because Plaintiff failed to raise factual allegations supporting a claim that the tour operator was incompetent or unfit and that Celebrity knew or should have known of its unfitness; (4) Count 4 fails to state a claim because Celebrity may not be held directly liable for the acts of a third-party; and (5) Count 5 fails because there can be no actual or apparent agency when the shore excursion ticket clearly states that: (a) the tour operator is a third-party contractor, (b) Celebrity does not operate or control shore excursions and (c) Celebrity will not be liable for any injuries sustained during a shore excursion. (*Id.* at 11.)

Plaintiff responded to Celebrity's Motion to Dismiss, arguing that: (1) she sufficiently states a claim for breach of the shore excursion contract (which was non-delegable) because her claim is separate and distinct from the contract for carriage. Alternatively, she states a claim for breach of a non-delegable tort duty (D.E. 20 at 7–12); (2) her claim for negligence survives because: (a) whether Celebrity knew or should have known of the dangerous conditions presented by the tour provider is a question of fact to be resolved after discovery, and (b) where a cruise line promotes, sell and profits from a shore excursion that was advertised as handicapped accessible, it has a duty to provide an accessible tour (*id.* at 12–15); and (3) her claim for actual or apparent agency survives Celebrity's Motion to Dismiss because: (a) questions of agency are intensely factual and require

discovery, and (b) the disclaimer in the shore excursion ticket represents Celebrity's own definition of its relationship with its shore excursion providers (i.e. independent contractors) and this self-imposed definition cannot be dispositive of the question of agency (*id.* at 16–19).[2] Plaintiff acknowledges that certain disclaimers were contained in her shore excursion ticket, but claims that "at no time did the Guest Services representative for the Defendant inform the Plaintiff that the excursion was anything other than a produce of the Defendant. There were no disclaimers made by the representative that the excursion was owned and operated by a third party vender." (D.E. 1 at ¶ 14.)

## II. LEGAL STANDARDS

### A. Rule 12(b)(6)

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss an action for "failure to state a claim upon which relief can be granted." To survive a motion to dismiss, the complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "A formulaic recitation of the elements of the cause of action will not do," *id.* at 1949 (quoting *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955), and the allegations must in-

---

**2.** Plaintiff did not present any argument as to why her negligent hiring/retention claim (Count 3) should survive Celebrity's Motion to Dismiss, but instead cited the elements of the claim. Additionally, Plaintiff did not directly argue that Count 4 of her Complaint states a claim, but instead that Counts 1 and 4 are interlinked.

clude "more than an unadorned, the-defendant-unlawfully-harmed-me-accusation." *Iqbal* 556 U.S. at 678, 129 S.Ct. 1937. When considering whether a complaint should be dismissed, the Court accepts the facts alleged in the Complaint as true, and construes all reasonable inferences in the light most favorable to plaintiffs. *See Bank v. Pitt*, 928 F.2d 1108, 1109 (11th Cir.1991).

## III. DISCUSSION

Both Parties agree that general maritime law governs Plaintiff's claims which arise from an injury that occurred on a shore excursion. *See Hoard v. Carnival Corp.*, 2015 WL 1954055 at *1–2, 2015 U.S. Dist. LEXIS 57538 at *4–5 (S.D.Fla. Apr. 17, 2015) (citing *Doe v. Celebrity Cruises, Inc.*, 394 F.3d 891, 901 (11th Cir.2004)) ("Claims based on injuries that occur while on shore excursions during the course of a cruise are governed by federal maritime law.").

### a. Breach of Non–Delegable Contractual Duty

 Celebrity correctly notes that under maritime law, a cruise ship passenger may not hold the cruise line responsible for breaching a contract of carriage unless "there is an express provision ... guaranteeing safe passage." *Doonan v. Carnival Corp.*, 404 F.Supp.2d 1367, 1372–73 (S.D.Fla.2005). The law developed in this way to ensure that passengers aboard vessels could not sidestep the warranty of seaworthiness by asserting breaches of various implied contractual duties. *Cf. Hass v. Carnival Cruise Lines, Inc.*, 1986 WL 10154 (S.D.Fla.1986). In its Motion to Dismiss and Reply to Plaintiff's Opposi-

tion, Celebrity implies that the undersigned previously extended the legal principles governing contracts of carriage to shore excursion contracts. (D.E. 10 at 4; D.E. 22 at 2) (noting that Plaintiff attempts to distinguish between a contract for carriage and a shore excursion contract, but arguing that "this distinction [ ] is extraneous and Plaintiff's argument is contrary to the holding of [the undersigned] in *Isberner v. Celebrity Cruises, Inc.*"). In *Isberner*, the undersigned recognized the potential distinction between contracts for carriage and shore excursion contracts, but dismissed the plaintiff's complaint because he failed to raise any factual allegations that the cruise line breached any provision of the shore excursion contract. 2006 WL 4005569 at *3 (S.D.Fla. December 21, 2006). Therefore, the decision in *Isberner* was based on plaintiff's failure to plead sufficient facts— not on a legal holding extending the principle developed by Judge King in *Hass* to shore excursion contracts.[3] In fact, the Court holds today that while concerns related to the doctrine of seaworthiness may limit causes of action for breach of a contract for carriage, such a limitation does not apply to a claim for breach of a shore excursion contract. *Cf. Martinez v. Dixie Carriers, Inc.*, 529 F.2d 457, 470 n. 8 (5th Cir.1976) ("[T]he unseaworthiness remedy is not available for injuries which occur on shore during the loading or unloading process and which are not caused by a vessel on navigable water."); *Harling v. United States*, 416 F.2d 405, 406 (9th Cir.1969) ("The doctrine of unseaworthiness does not extend to injuries caused by instrumentalities ashore."); *Kent v. Shell Oil Co.*, 286 F.2d 746, 752 (5th Cir.1961) ("Where the injuries are sustained wholly

---

**3.** The Court also notes that its decision in *Isberner* came before the Supreme Court's

transformative decisions in *Twombly* and *Iqbal.*

ashore and are caused by a thing not a part of a vessel or its appurtenances, the failure or deficiency of such facility is not deemed either to constitute unseaworthiness or give rise to any recovery under the doctrine of seaworthiness."). Therefore, an "express provision . . . guaranteeing safe passage" is not required to state a cause of action for breach of a shore excursion contract.

■ In this case, Plaintiff not only entered into a contract for the sale of a shore excursion, but also purportedly contracted with Celebrity for a handicapped-accessible shore excursion. Nothing in the shore excursion ticket directly addresses the alleged separate contract to provide handicapped-accessible services, but Plaintiff alleges that Celebrity, through its advertisements and employees' representations, repeatedly assured her that this excursion would be handicapped-accessible. Under Florida contract law, which the Court will apply in the absence of any maritime law to the contrary, an oral modification of an agreement is allowed, even if the agreement explicitly states that it may only be modified or terminated in writing. *See Professional Insurance Corp. v. Cahill,* 90 So.2d 916 (Fla.1956) ("A written contract or agreement may be altered or modified by an oral agreement if the latter has been accepted and acted upon by the parties in such manner as would work a fraud on either party to refuse to enforce it."); *Arvilla Motel, Inc. v. Shriver,* 889 So.2d 887 (Fla. 2d DCA 2004). *See also Fidelity & Deposit Co. v. Tom Murphy Constr. Co.,* 674 F.2d 880 (11th Cir.1982) (surveying the law of Florida on the issue of oral modification of written contracts); *Pan Am. Eng'g Co. v. Poncho's Constr. Co.,* 387 So.2d 1052, 1053 (Fla. 5th DCA 1980)

(holding that "[t]here is solid support for the principle that written contracts can be modified by subsequent oral agreement of the parties, even though the written contract purports to prohibit such modification"). Therefore, even if Celebrity is correct that the terms of the shore excursion contract limit its general liability, Plaintiff's allegations that said contract was orally modified to include a guarantee that the excursion was handicapped accessible are sufficient to survive a motion to dismiss. Accordingly, Count 1 of Plaintiff's Complaint sufficiently states a cause of action to proceed to discovery.

#### b. Direct Negligence

■ The basic elements of a claim for negligence under general maritime law are the same as at common law. *See Whelan v. Royal Caribbean Cruises Ltd.,* 2013 WL 5583970, at *2–3, 2013 U.S. Dist. LEXIS 147811 *7–8 (S.D.Fla. Aug. 14, 2013). The plaintiff must prove that: (1) defendant had a duty to protect plaintiff from a particular injury; (2) defendant breached that duty; (3) defendant's breach was the proximate cause of plaintiff's injuries; and (4) plaintiff suffered damages as a result of said injuries. *See Chaparro v. Carnival Corp.,* 693 F.3d 1333, 1336 (11th Cir.2012).

■ It is clearly established that cruise lines owe their passengers a duty to warn of known or foreseeable dangers. "[W]here [a] menace is . . . encountered on land and [is] not clearly linked to nautical adventure," *Keefe v. Bahama Cruise Line, Inc.,* 867 F.2d 1318, 1322 (11th Cir.Fla. 1989), "the exercise of reasonable care is defined as the duty to warn of dangers on shore that are not open and obvious, of which the cruise line had actual or constructi[ve] knowledge, and that exist in places where passengers are invited or

reasonably expect to visit," *Lapidus v. NCL Am. LLC*, 924 F.Supp.2d 1352, 1356–57 (S.D.Fla.2013).

■ Here, Plaintiff alleges that because of Celebrity's longstanding relationship with the tour operator, Celebrity should have known of the danger she faced being unloaded from the bus and should have warned her of the potential harm. Celebrity argues that Plaintiff has failed to allege that it knew or should have known of the danger she faced. However, the Eleventh Circuit has previously stated that arguments on the foreseeability of a danger are "more appropriate after discovery at the summary judgment stage or at trial." *Chaparro*, 693 F.3d at 1337. This makes perfect sense because a passenger has few ways of determining what the cruise line knew or should have known before discovery is conducted.

Additionally, Plaintiff—citing Judge Altonaga's recent decision in *Pucci v. Carnival Corp.*, 146 F.Supp.3d 1281, 2015 WL 7272764 (S.D.Fla. November 18, 2015)—argues that cruise lines have supplementary duties under the reasonable care standard when they know of a passenger's disabilities or handicaps. *See also Carroll v. Carnival Corp.*, 2013 WL 1857115, at *4 (S.D.Fla. May 2, 2013) ("[A] carrier with knowledge of a passenger's abnormal physical disability may have to do more under the reasonable care standard toward that passenger than it would toward a passenger with no physical disability."). In *Pucci*, the Court determined that the scope of Carnival's duty to warn about the dangerousness of a snorkeling excursion was impacted by its prior knowledge that the decedent was a poor swimmer of advanced age. 146 F.Supp.3d at 1287–90, 2015 WL 7272764 at *4–5. In this case, Plaintiff alleges that she informed Celebri-

ty of her physical disabilities. Therefore, she asserts that Celebrity's duty to warn of the dangerousness of her excursion should be viewed in light of its prior knowledge of her disabilities. The Court agrees.

Plaintiff alleges that "when the tour operator began to debark the Plaintiff off the ramp of the bus, the operator turned the handle bar of the Plaintiff's scooter causing the Plaintiff to fall to the ground...." (D.E. 1 at ¶ 18.) Celebrity is correct that this allegation standing alone does not allege a danger that is capable of being known or foreseen. Rather, it details what appears to be a one-time, non-recurring mishap. However, Plaintiff supplemented this allegation by alleging the following: "[Celebrity] knew or should have known the Easy Lisbon practice of loading and unloading special needs passengers was unsafe." (*Id.* at ¶ 22(b).) Under *Twombly/Iqbal's* liberal pleading standard, the Plaintiff is not required to specifically detail which policies and procedures were unsafe and how they created danger. She need only allege that there was a danger that Celebrity should or could have known about. Because Plaintiff has satisfied her pleading requirements, her claim for negligence survives Celebrity's 12(b)(6) motion.

### c. Negligent Hiring/Retention

Count 3 of Plaintiff's Complaint is for "negligent selection of a shore excursion provider." The Court construes this Count as a claim for negligent hiring/retention of the shore excursion operator.

■ A principal may be subject to liability "for physical harm to third persons caused by [its] failure to exercise reasonable care to employ a competent and careful employee/agent/contractor to: (a) do work which will involve a risk of

physical harm unless it is skillfully and carefully done, or (b) perform any duty which the employer owes to third persons." *Smolnikar v. Royal Caribbean Cruises Ltd.*, 787 F.Supp.2d 1308, 1318 (S.D.Fla.2011) (quoting *Suarez v. Gonzalez*, 820 So.2d 342, 345 (Fla. 4th DCA 2002)). To state a claim for negligent hiring or retention against a principal, a plaintiff must prove that "(1) the agent/employee/contractor was incompetent or unfit to perform the work; (2) the employer knew or reasonably should have known of the particular incompetence or unfitness; and (3) the incompetence or unfitness was a proximate cause of the plaintiff's injury." *Id.* (citing *Davies v. Commercial Metals Co.*, 46 So.3d 71, 73–74 (Fla. 5th DCA 2010)). To satisfy the second element of a negligent hiring or retention claim, a plaintiff must allege facts "showing that the employer was put on notice of the *harmful propensities* of the [agent/employee/contractor]." *Stires v. Carnival Corp.*, 243 F.Supp.2d 1313, 1318 (M.D.Fla.2002) (citing *Willis v. Dade Cnty. Sch. Bd.*, 411 So.2d 245, 246 (Fla. DCA 1982)). (Emphasis added.)

 "The principal difference between negligent hiring and negligent retention as a basis for employer liability is the time at which the employer is charged with knowledge of the employee's unfitness." *Mumford v. Carnival Corp.*, 7 F.Supp.3d 1243, 1249 (S.D.Fla.2014) (citing *Stires*, 243 F.Supp.2d at 1318) (quoting *Garcia v. Duffy*, 492 So.2d 435, 438 (Fla. 2d DCA 1986)). Negligent hiring occurs when, "prior to the time the employee is actually hired, the employer knew or should have known of the employee's unfit-

ness, and the issue of liability primarily focuses upon the adequacy of the employer's pre-employment investigation into the employee's background." *Id.* (citing *Williams v. Feather Sound, Inc.*, 386 So.2d 1238 (Fla. 2d DCA 1980)). Whereas, liability for negligent retention "occurs after employment begins, where the employer knows or should know of an employee's unfitness and fails to take further action such as investigating, discharge or reassignment." *Franza v. Royal Caribbean Cruises, Ltd.*, 948 F.Supp.2d 1327, 1334 (S.D.Fla.2013) (quoting *Malicki v. Doe*, 814 So.2d 347, 362 n. 15 (Fla.2002)).

 Plaintiff alleges that the tour operator's "practice of loading and unloading special needs passengers was unsafe," (D.E. 1 at ¶ 34(b)), and that Celebrity "knew about the above dangers or they existed long enough so Defendant should have discovered them in exercising due care." (*Id.* at ¶ 35.) Plaintiff has alleged that the tour operator's practices and procedures were unsafe and this is sufficient to satisfy the first element of a negligent retention claim – that the employee/agent/contractor was incompetent or unfit. Plaintiff has also alleged that because of the length of Celebrity's relationship with the tour operator, it knew or should have known of these dangerous practices. This satisfies the second element of a negligent retention claim. And finally, Plaintiff claims that these dangerous procedures proximately caused her injuries. (*Id.* at ¶ 37.) Accordingly, Plaintiff has stated a claim for negligent retention.[4]

### d. Direct Negligence for Action of Tour Operator

 In Count 4, Plaintiff asserts that Celebrity is directly liable for the negli-

---

**4.** Plaintiff has not stated a claim for negligent hiring, because none of the factual allegations support an inference that the tour operator's incompetence or unfitness existed at the time it was retained by Celebrity.

gence of the tour operator. No matter what the status of the tour operator is ultimately determined to be—whether independent contractor, agent or employee—the Court is unaware of any legal theory that would permit Plaintiff to hold Celebrity directly liable for the acts of another. Any liability attributable to Celebrity for the misconduct of the tour guide would be vicarious—not direct. And to the extent Count 4 attempts to hold Celebrity liable for its own negligence, the Court sees no distinction between Count 2 and Count 4.[5] Accordingly, Count 4 fails to state a recognized cause of action and is dismissed accordingly.

### e. Vicarious Liability for the Acts of an Actual or Apparent Agent

 The Court notes from the outset that actual and apparent agency are not independent causes of action, but instead theories of liability. *See Barabe v. Apax Partners Europe Managers, Ltd.*, 359 Fed. Appx. 82, 84 (11th Cir.2009) (holding that there is no cause of action for "agency"); *Lewis v. City of St. Petersburg*, 260 F.3d 1260 (11th Cir.2001). Nevertheless, when a plaintiff sufficiently pleads an underlying negligence claim against an apparent or actual agent, courts may hold the principal vicariously liable for the agent's negligence.

 Actual agency exists when the principal acknowledges that the agent will act for it, the agent accepts the undertaking, and the principal controls the agent's actions. *See Gayou v. Celebrity Cruises,*

*Inc.*, No. 11–23359–CIV, 2012 U.S. Dist. LEXIS 77536, 2012 WL 2049431, at *10 (S.D.Fla. June 5, 2012). In contrast, "[a]pparent agency exists where the alleged principal makes a manifestation that causes a third party to reasonably believe that the alleged agent had the authority to act for the benefit of the principal, and the third party reasonably acts on such belief to his detriment." 2012 U.S. Dist. LEXIS 77536, 2012 WL 2049431 at *9 (citing *Fojtasek v. NCL (Bahamas) Ltd.*, 613 F.Supp.2d 1351, 1357 (S.D.Fla.2009)). To hold a principal liable for the negligence of either an actual or apparent agent, a plaintiff must "sufficiently allege the elements of [ ] agency in addition to the elements of the underlying negligent act of the agent for which the plaintiff seeks to hold the principal liable." *See Rojas v. Carnival Corp.*, 93 F.Supp.3d 1305, 1311 (S.D.Fla. 2015).

 Celebrity asserts that Plaintiff's claim that the shore excursion operator was its actual or apparent agent is foreclosed by the contractual disclaimer which clearly labels the shore excursion operator as an "independent contractor." However, well-established agency principles contradict Celebrity's position. It has been widely held that the existence or scope of an agency relationship is not "controlled by the parties' use of descriptive labels." *In re Brican Am. LLC Equip. Lease Litig.*, 2015 WL 235409, 2015 U.S. Dist. LEXIS 5923 (S.D.Fla. Jan. 16, 2015) (holding that a conclusory "no agent" clause in the one-column Financing Agreements cannot trump a consistent pattern of be-

---

5. In an attempt to clarify the otherwise curious way Count 4 was pleaded, Plaintiff appears to argue that Celebrity's duties to her were non-delegable and that Celebrity cannot assign its own liability to a third-party. However, Celebrity has not assigned its tort liability to another—rather it argues it has no direct or vicarious tort liability at all. Regardless, if Plaintiff's ultimate goal is to hold Celebrity directly liable for its own negligence, there is no distinction between Count 2 and Count 4.

havior between Brican Inc. and Brican LLC); *see also Villazon v. Prudential Health Care Plan,* 843 So.2d 842, 853 (Fla. 2003) (holding that the nature and scope of the agency relationship is a factual question determined by the totality of the circumstances and cannot be decided based on how the parties define the relationship in a contract or series of contracts); *Cantor v. Cochran,* 184 So.2d 173, 174 (Fla. 1966) ("While the obvious purpose to be accomplished by this document was to evince an independent contractor status, such status depends not on the statements of the parties but upon all the circumstances of their dealings with each other."); *Parker v. Domino's Pizza, Inc.,* 629 So.2d 1026, 1027 (Fla. 4th DCA 1993) (holding that the nature and extent of the relationship of parties with regard to agency presents a question of fact and is not controlled by descriptive labels employed by the parties). Therefore, how Celebrity defines its relationship with its shore excursion provider is not determinative of the actual nature of the relationship.

As previously noted the nature and scope of an agency relationship is intensively factual and will almost always require discovery to fully resolve the issues. *Gayou v. Celebrity Cruises, Inc.,* 2012 WL 2049431 (S.D.Fla. Jun. 5, 2012) (finding that, allegations regarding the manner in which the excursions were marketed, sold, charged and paid for through the cruise line were sufficient to withstand a motion to dismiss plaintiff's apparent agency claim); *Estate of Miller v. Toyota Motor Corp.,* 2007 WL 4482589, 2007 U.S. Dist. LEXIS 92640 (M.D.Fla. Dec. 18, 2007) ("The issue of agency is fact intensive, and some degree of discovery will probably be required to piece together a sufficient record to decide this matter on summary judgment."); *Harper ex rel. Daley v. Toler,* 884 So.2d 1124, 1130–31 (Fla. DCA 2d 2004) (setting forth ten non-exclusive fac-

tors to consider when determining whether an individual is an employee rather than an independent contractor for purposes of vicarious tort liability). Because Plaintiff has pleaded that Celebrity has a long-standing, profit-sharing relationship with its shore excursion operator, it has alleged sufficient facts to permit discovery on the question of agency.

## IV. CONCLUSION

Accordingly, it is **ORDERED AND AD-JUDGED** that:

1. Defendant Celebrity's Motion to Dismiss (D.E. 10), filed on June 16, 2015, is **GRANTED IN PART AND DENIED IN PART.**

2. Counts 1, 2, 3 and 5 state causes of action which survive Celebrity's 12(b)(6) Motion;

3. Count 4 fails to state a cognizable cause of action and is **DISMISSED WITH PREJUDICE;**

**DONE AND ORDERED** in Chambers at Miami, Florida, this 4th day of February, 2016.