**HUNG KANG HUANG, Plaintiff,**

v.

**CARNIVAL CORPORATION, et al., Defendants.**

**Case No. 1:12–cv–23345–UU.**

United States District Court, S.D. Florida.

Dec. 11, 2012.

Eric Charles Morales, Michael A. Winkleman, Lipcon, Margulies, Alsina & Winkleman, P.A., Miami, FL, for Plaintiff.

Jeffrey Eric Foreman, Noah Daniel Silverman, Rachael A. Mitchell, Foreman Friedman, PA, Miami, FL, Michael J. Drahos, Fowler White Burnett, P.A., West Palm Beach, FL, for Defendants.

### ORDER ON MOTION TO DISMISS

URSULA UNGARO, District Judge.

THIS CAUSE is before the Court upon Defendant Carnival Corporation's Motion to Dismiss Plaintiff's Complaint, D.E. 12, filed October 19, 2012. Plaintiff filed its Response, D.E. 18, on November 15, 2012. Defendant filed its Reply, D.E. 27, on November 30, 2012. Accordingly, this matter is now ripe for disposition.

THE COURT has considered the Motion and the pertinent portions of the record, and is otherwise fully advised in the premises. Defendant moves that the Court dismiss each of the Counts asserted against it, arguing that: (1) Counts I, V, and XII[1] fail to state a claim for relief; and (2) Counts II, III, and IV must be dismissed because Defendant may not be held vicariously liable for the malpractice of its on-board medical providers. For the reasons set forth below, the Court agrees with Defendant as to Counts II, III, IV, V, and XII, but disagrees as to Count I, which it finds to be properly stated.

### Background

Plaintiff, Hung Kang Huang, is a citizen of New York. D.E. 1 ¶ 1. Defendant, Carnival Corporation ("Carnival") is a corporation incorporated under the laws of Panama, with its principal place of business in Florida. *Id.* Carnival is engaged in the business of promoting and operating vacation cruises aboard its vessels, including, in this case, the *Carnival Miracle.* *Id.* ¶ 3(f). On or about September 30, 2011, Plaintiff was a paying passenger on the *Carnival Mircale,* which, at the time, was in navigable waters. *Id.* ¶ 13.

Plaintiff alleges that, during his stay on the *Carnival Miracle,* on or about September 30, 2011, he slipped and fell in the shower inside his cabin bathroom, injuring his neck and spine. *Id.* ¶ 15. According to Plaintiff, he requested medical evacuation from the *Carnival Miracle,* which at the time was located in port at King's Wharf, Bermuda, but his request was denied and he was sent back to his cabin without any way to stabilize, immobilize, or support his injured neck or spine. *Id.* He further alleges that he did not receive any treatment for the bruising that he sustained. *Id.* He was finally evacuated from the ship the following day, but alleges that

the delay in treatment, coupled with the failure to stabilize, immobilize, or support his neck and spine, caused Plaintiff severe injuries and further aggravation of the injuries he sustained in the shower accident. *Id.* As a consequence of all this, Plaintiff claims to have suffered a loss of motor capacity, loss of sensation, loss of physical strength, and difficulties walking. *Id.*

The Complaint charges one count of negligence directly against Carnival for failing to take reasonable care in the design and maintenance of its showers. *Id.* ¶ 16. Specifically, Plaintiff claims to have been injured as a result of Carnival's failure to have a "proper shower" in his cabin's bathroom, failure to utilize adequate flooring in the shower, failure to adequately design the shower so as to prevent slipping hazards, failure to provide adequate markings of a slipping hazard, failure to provide adequate hand-holds or grips in the cabin bathroom generally and shower specifically, failure to provide an adequate shower door to prevent persons from slipping in the shower and then falling out of the same, and other failures in bathroom design and safety protocol. *Id.* ¶ 18.

The remaining counts directed at Carnival are derivative of Carnival's relationship to the medical staff that attended Plaintiff aboard the *Carnival Miracle.* These members of the shipboard medical staff that provided care to Plaintiff aboard the ship are William Pretorius ("Pretorius"), Jacqueline Gobeil ("Gobeil"), and Bryan Patiu ("Patiu"). *Id.* ¶ 5. At all times material to this action, Pretorius was the ship's doctor, worked in the vessel's medical facility, and intended to provide medical care to Plaintiff. *Id.* ¶ 9. At all times material to this action, Gobeil and Patiu worked as nurses in the ship's medical facility, and

---

**1.** Plaintiff appears to have misnumbered this Count, but the parties have continued to refer to it as Count XII for clarity's sake. The Court will do the same.

intended to provide medical care to Plaintiff. *Id.* Plaintiff alleges that, at all relevant times, Carnival agreed to provide indemnity insurance coverage for Pretorius, Gobeil, and Patiu regarding the claims asserted in this action, and that Plaintiff was a third-party beneficiary to those agreements. *Id.* ¶ 12.

### Legal Standard

In order to state a claim, Fed.R.Civ.P. 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief." While a court, at this stage of the litigation, must consider the allegations contained in the plaintiff's complaint as true, this rule "is inapplicable to legal conclusions." *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009). In addition, the complaint's allegations must include "more than an unadorned, the-defendant-unlawfully-harmed-me accusation." *Id.* (citing *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 555, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). Thus, "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* (citing *Twombly,* 550 U.S. at 555, 127 S.Ct. 1955).

■ In practice, to survive a motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" *Id.* (quoting *Twombly,* 550 U.S. at 570, 127 S.Ct. 1955). A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged. *Id.* The plausibility standard requires more than a sheer possibility that a defendant has acted unlawfully. *Id.* Where a complaint pleads facts that are merely consistent with a defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief. *Id.* Determining whether a complaint states a plau-

sible claim for relief is a context-specific undertaking that requires the court to draw on its judicial experience and common sense. *Id.* at 679, 129 S.Ct. 1937.

### Discussion

### A. Plaintiff properly states a claim for negligence

■ Carnival moves to dismiss Count I, which alleges negligence on its part, for failure to state a claim on which relief may be granted. *See* Fed.R.Civ.P. 12(b)(6). Carnival argues that Count I should be dismissed because: (1) it contains mere conclusory form allegations; and (2) it fails to allege proximate causation. With respect to the first contention, Carnival maintains that Plaintiffs list of alleged shower and bathroom defects, *see* D.E. 1 ¶ 18, are "simply form allegations completely devoid of factual support," D.E. 27, at 2. The Court finds that the allegations made in Count I are sufficiently detailed for the purposes of the Rule 8 notice pleading, as they relate directly to the circumstances in which Plaintiff claims to have suffered the accident in question. The allegations relate specifically to the place of injury—the shower stall within the cabin's bathroom. Furthermore, Plaintiff alleges design and safety protocol deficiencies that relate specifically to slip-and-fall dangers. Count I does not run mechanically recite all allegations that could be made with respect to defective shower stalls (*e.g.,* that the water was scalding hot, that there was moldy growth, or that a jagged surface punctured his exposed skin). There is no basis for classifying these allegations as "mere conclusory form allegations."

■ The Court also finds that Plaintiff sufficiently pleaded a basis for proximate cause. Federal courts do not require that plaintiffs formulaically recite the elements of a cause of action. The Complaint states

that "Plaintiff was injured *due to* the fault and/or negligence of Defendant Carnival ... as follows," D.E. 1 ¶ 18, and then proceeds to list, in fourteen subparagraphs, the alleged failures on Carnival's part that resulted in Plaintiffs injuries. These allegations point to inadequate flooring, a lack of handrails, a faulty door, and a lack of warning notices as the causes of Plaintiff's slip-and-fall. These allegations suffice to give Defendants notice of the claim leveled against it.

### B. Counts II, III, and IV may not be asserted vicariously against Carnival.

Carnival correctly contends that it may not be held vicariously liable for the alleged malpractice of its medical staff Plaintiff concedes that the weight of existing authority supports the position that ship owners may not be held vicariously liable for the malpractice of its shipboard medical staff. Instead, Plaintiff urges the Court to depart from settled precedent For the reasons set forth below, the Court upholds the majority rule with respect to a ship owner's vicarious liability.

■ It is now well-settled that ship owners cannot be held vicariously liable under general maritime law for a physician's or other medical staff's negligence in treating on-board patients. *See Benedict on Admiralty* § 9.03 (7th ed. 2011). The case most cited for this proposition is *Barbetta v. S/S Bermuda Star*, 848 F.2d 1364, 1372 (5th Cir.1988). Although the Eleventh Circuit has not, itself, expressly adopted this rule, courts in this District have roundly upheld the rule in *Barbetta*. *See, e.g., Ridley v. NCL (Bahamas) Ltd.*, 824 F.Supp.2d 1355, 1362 (S.D.Fla.2010); *Peterson v. Celebrity Cruises, Inc.*, 753 F.Supp.2d 1245 (S.D.Fla.2010); *Hesterly v. Royal Caribbean Cruises*, 515 F.Supp.2d 1278 (S.D.Fla.2007); *Hajtman v. NCL (Bahamas) Ltd.*, 526 F.Supp.2d 1324 (S.D.Fla.2007).

The most durable rationale underlying *Barbetta* is that ship owners are powerless to intrude into the physician-patient relationship. *See Barbetta*, 848 F.2d at 1371. Shipboard medical staff may serve as part of the ship's crew and may be subject to the master's orders as to non-medical matters, but such authority does not hold true with respect to the medical staffs professional judgment, over which the ship's non-medical superiors have no control. *See Nelson on Admiralty* § 9.03[a]. Plaintiff, recognizing this obstacle to vicarious control (and therefore vicarious liability), argues that *Barbetta's* foundations have been eroded by changes in modern technology, which can put shipboard medical staff in virtual contact with the ship owner's on-shore medical personnel. To establish an exception to the rule on that basis, however, would imply that shipboard medical staff (which in this case consisted of independent contractors) owe their patients a duty to confer remotely with a shipowner's employed medical staff in the course of rendering treatment, and that a breach of that duty could then be imputed to the shipowner vicariously. The Court declines to venture into those waters.

Nor does the Court give credence to Plaintiff's assertion that *Barbetta* is especially susceptible to distinction or abrogation because neither the Supreme Court nor the Eleventh Circuit have affirmatively pronounced or reiterated the rule in holdings of their own. That the Supreme Court has not explicitly weighed in means nothing at all, since it would have no reason to grant a writ of certiorari on a question of general maritime law over which there is absolutely no disagreement among the lower courts. And while the Eleventh Circuit may not have had occasion to explicitly rule on the matter, it has

at least affirmed the decisions of district courts that applied *Barbetta*. *See, e.g., Nanz v. Costa Cruises, Inc.*, 932 F.2d 977 (11th cir.1991) (unpublished table decision), *off'ing* 1991 AMC 48 (S.D.Fla.1990) (holding that "as a matter of law, [a shipowner] cannot be held liable for the negligence, if any, of [a shipboard medical provider]").

■ In Counts III and IV of the Complaint, Plaintiff attempts to circumvent *Barbetta* by pleading "apparent agency against Carnival Corporation for acts of Defendant William Pretorius," D.E. 1, at 9, and "apparent agency against Carnival Corporation for the acts of the ships [sic] nurses, Defendants Jacqueline Gobeil and Bryan Patau," *Id.* at 12. While *Barbetta* might not prohibit such agency claims as a matter of law, these claims are in practice very difficult to establish. *Peterson*, 753 F.Supp.2d 1245, 1248 (S.D.Fla.2010).[2] Under general maritime law, apparent agency may be established when: (1) the alleged principal makes some sort of manifestation causing a third party to believe that the alleged agent had authority to act for the benefit of the principal, (2) such belief was a reasonable, and (3) the claimant reasonably acted on such belief to his detriment. *Doonan v. Carnival Corp.*, 404 F.Supp.2d 1367, 1371 (S.D.Fla.2005). Absent an explicit manifestation by the ship owner countering the settled principle that medical staff are not their agents, it is unreasonable *as a matter of law* for a passenger to believe that the medical staff are the ship owner's agents. *See Hajtman*, 526 F.Supp.2d at 1328–29; *Warren v. Ajax*

*Navigation Corp.*, 1995 A.M.C. 2609, at \*3 (S.D.Fla.1995).

### C. Plaintiff fails properly to state a claim for joint venture liability

■ Plaintiff cannot make out a claim for liability under the theory that Carnival and its shipboard medical staff were engaged in a joint venture to provide medical services to passengers aboard the *Carnival Miracle*. In order to assert a joint venture claim, Plaintiffs must allege: (1) the intention of the parties to create a joint venture; (2) joint control or right to control; (3) joint proprietary interest in the subject matter of the joint venture; (4) the right of all venturers to a share in the profits; and (5) the duty of both to share in the losses. *Skeen v. Carnival Corp.*, No. 08–22618, 2009 WL 1117432, at \*3 (S.D.Fla. Apr. 24, 2009). Contrary to Carnival's contention, under current general maritime law, the foregoing factors do not quite form a conjunctive test in which every element must be met. Rather, the factors listed above act as "signposts, likely indicia, but not prerequisites," establishing that a plaintiff has plausibly stated a joint venture claim. *See Fulcher's Point Pride Seafood, Inc. v. M/V Theodora Maria*, 935 F.2d 208, 211 (11th Cir.1991).

■ Plaintiff does not allege any facts that might plausibly establish the existence of a joint venture between Carnival and the shipboard medical staff that attended him. A court considering the sufficiency of a pleading should "begin by identifying allegations that, because they are

---

2. Furthermore, the trend does seem to be toward reading the *Barbetta* Rule itself as a bar to any form of vicarious liability for the actions of medical staff, regardless of the doctrinal label affixed to the particular claim. *See, e.g., Wajnstat v. Oceania Cruises, Inc.*, No. 09–21850, 2011 WL 465340, at \*4 (S.D.Fla. Feb. 4, 2011) ("The Rule of *Barbetta* does not allow for liability under an apparent agency

theory since the doctrine of apparent agency is simply a form of *respondeat superior* liability.") (citing 3 Am Jur.2d *Agency* 262); *Benedict on Admiralty* § 9.03[b] ("It seems illogical for a court to allow a plaintiff to prevail against a defendant on a claim of apparent agency when that same defendant could not be found liable if the doctor was their actual agent.").

mere conclusions are not entitled to the assumption of truth." *Iqbal,* 556 U.S. at 664, 129 S.Ct. 1937. Most of the statements made in Count V of the Complaint are mere recitals of the elements of a joint venture, and are thus not entitled to the presumption of truth. *See Gentry v. Carnival Corp.,* No. 11–21580, 2011 WL 4737062 (S.D.Fla. Oct. 5, 2011). For example, Paragraph 55 recites that, defendants: "Had a joint proprietary interest," D.E. 1 ¶ 55(b); "Had a joint control or right of control," *id.* ¶ 55(c); "Had a right to share in the profits of the joint venture," *id.* ¶ 55(d); and "Would share losses which may have been sustained," *id.* ¶ 55(e).

Plaintiff's allegations as to joint proprietary interest and joint control cannot plausibly satisfy those elements. Plaintiff alleges that "Carnival had the interest in the money it devoted to setting up the medical facility and Defendants William Pretorius, Jacqueline Gobeil, and Bryan Patiu had a proprietary interest in the time and labor expended in operating the ship's medical facility." *Id.* ¶ 54. But a joint proprietary interest "requires joint ownership of the subject matter of the contract," *Gibson v. NCL (Bahamas) Ltd.,* No. 11–24343, 2012 WL 1952667, at *8 (S.D.Fla. May 30, 2012), whereas all that Plaintiff pleads is a division of responsibilities. He further states, without any support, that "a duty to share losses actually and impliedly exists as a matter of law in a situation where one party supplies the labor, experience and skill, and the other the necessary capital." *Id.* Plaintiff's allegations fall far short of the standard set in maritime decisions permitting joint venture claims, the vast majority of which concerned onshore excursion companies sharing a symbiotic ticketing and programming relationship with the cruise lines whose passengers they served. *See, e.g., Gibson,* 2012 WL 1952667, at *8; *Gentry,* 2011 WL 4737062, at *7.

**D. Plaintiff fails properly to state a third-party beneficiary claim against Carnival**

▮ Plaintiff fails to make out a third-party beneficiary claim against Carnival because it does not allege that Carnival breached the purported contract to which Plaintiff is a third-party beneficiary. A party making a third-party beneficiary claim must allege: (1) the existence of a contract in which the claimant is not a party; (2) an intent by the contracting parties that the contract primarily and directly benefit the plaintiff; (3) a breach of that contract by one of the parties; and (4) damages resulting from the breach. *Rinker v. Carnival Corp.,* 753 F.Supp.2d 1237, 1243–44 (S.D.Fla.2010) (citing *Caretta Trucking, Inc. v. Cheoy Lee Shipyards, Ltd.,* 647 So.2d 1028, 1031 (Fla.Dist.Ct. App.1994)). Although it has alleged the existence of a contract, intended to directly benefit Plaintiff and passengers, the breach it alleges is by the medical staff Defendants, not Carnival. *See* D.E. 1 ¶ 71(c) ("Therefore ... Defendants breached their contract with Carnival."). As another court in this District aptly stated in its order dismissing another such claim brought by the same counsel: "To hold Carnival liable for a breach by the other contracting parties, as Plaintiff seeks to do, would turn contract law on its head" *Rinker,* 753 F.Supp.2d at 1244. This Court concurs in that judgment.

Accordingly, it is hereby

ORDERED AND ADJUDGED that Defendant's Motion to Dismiss, D.E. 12, is GRANTED IN PART and DENIED IN PART. Counts II, III, IV, V, and XII of the Complaint, D.E. 1, are DISMISSED WITH PREJUDICE. The Motion is denied as to Count I.