Donna MUMFORD, Plaintiff,

v.

CARNIVAL CORPORATION, Doctor Vusumzi Mbuthuma, Doctor Doe, and Nurse Doe, Defendants.

No. 13–22604–CIV.

United States District Court, S.D. Florida.

Signed March 18, 2014.

1244

Kerry Alexander Nierenberg, Michael A. Winkleman, Lipcon Margulies & Alsina, Miami, FL, for Plaintiff.

Darren Wayne Friedman, Jeffrey Eric Foreman, Marcus G. Mahfood, Foreman Friedman, PA, Miami, FL, for Defendants.

*OMNIBUS ORDER GRANTING DEFENDANT'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT (D.E. 11), DENYING PLAINTIFF'S MOTION TO CONDUCT LIMITED DISCOVERY REGARDING THE ISSUE OF CARNIVAL'S CONTROL OVER THE MEDICAL DEFENDANTS (D.E. 18), AND DENYING AS MOOT DEFENDANT'S MOTION TO STRIKE SECTION II OF PLAINTIFF'S COMPLAINT (D.E. 12)*

JOAN A. LENARD, District Judge.

**THIS CAUSE** is before the Court upon Defendant Carnival Corporation's ("Carnival") Motion to Dismiss Plaintiff's Complaint ("Motion," D.E. 11), filed August 26, 2013. On October 2, 2013, Plaintiff, Donna Mumford ("Plaintiff") filed a Response ("Response," D.E. 19), to which Carnival filed a Reply on October 22, 2013 ("Reply," D.E. 26). Also before the Court is Carnival's Motion to Strike Section II of Plaintiff's Complaint. On October 2, 2013, Plaintiff filed a Response (D.E. 20), to which Carnival filed a Reply on October 21, 2013 (D.E. 25). Also before the Court is Plaintiff's Motion to Conduct Limited Discovery Regarding the Issue of Carnival's Control Over the Medical Defendants

(D.E. 18), filed October 2, 2013. On October 21, 2013, Carnival filed a Response (D.E. 24), to which Plaintiff filed a Reply on October 31, 2013 (D.E. 28). Upon review of the Motions, Responses, Replies, and the record, the Court finds as follows.

## I. Background [1]

This is a maritime action for injuries suffered after Plaintiff suffered a stroke while a passenger aboard the Carnival Liberty cruise ship. (Complaint ¶¶ 8, 20–21.) Plaintiff began suffering symptoms around 6:00 AM on July 20, 2012. (*Id.* ¶ 20.) Around 7:30 AM, Plaintiff's husband called the medical facilities and nurses arrived in their cabin around 8:00 AM. (*Id.*) After diagnosing the stroke, the ship's doctor indicated that he could not use "clot-buster drugs which he had onboard because he did not have the proper medical equipment onboard, such as a CT scan machine, to determine whether her stroke was ischemic or [hemorrhagic]." (*Id.* ¶ 21.) "As a result, the defendant(s) . . . waited several hours until they coordinated a shipboard—air evacuation with the U.S. Coast Guard." (*Id.*) By the time the Coast Guard arrived at the ship, Plaintiff was completely paralyzed on the right side. (*Id.*) Plaintiff is still paralyzed on the right side of her body. (*Id.* ¶ 22.)

Plaintiff originally filed suit on March 14, 2013 in Case Number 13–20929–CIV–LENARD/O'SULLIVAN. (*Id.* ¶ 6.) That action was dismissed without prejudice on May 3, 2013 for failure to comply with a Court Order. (*Id.*) Plaintiff filed the instant Complaint on July 19, 2013. (D.E. 1.) Carnival is named in four of the six counts, including (1) Count I for negligence, (2) Count II for vicarious liability for the negligence of the ship's medical staff, (3) Count III for vicarious liability for the negligence of the ship's medical staff based upon apparent agency, and (4) joint venture between Carnival and the medical defendants.[2]

Carnival moves to dismiss: (1) Count I for failure to adequately allege negligence (Motion at 3), and/or negligent hiring, retention, and training (*id.* at 7); (2) Counts I & II because they seeks to hold Carnival liable for breaches of a duty not imposed by law (*id.* at 4); (3) Count III because pleading "apparent agency" is an impermissible attempt to evade well-settled law that a ship-owner is not liable for the negligence of its medical staff (*id.* at 10), and that Plaintiff nevertheless fails to plead apparent agency (*id.* at 12); and (4) Count IV for failure to adequately plead joint venture (*id.* at 16).

With respect to Counts I and II, Plaintiff's Response is devoted entirely to urging the Court to reject the seminal case of *Barbetta v. S/S Bermuda Star,* 848 F.2d 1364, 1372 (5th Cir.1988), which holds that "general maritime law does not impose liability under the doctrine of respondeat superior upon a carrier or ship owner for the negligence of a ship's doctor who treats the ship's passengers." [3] (Response at 1–16.) "Plaintiff argues in good-faith for the modification of this law . . . ." (*Id.* at 3–4.) She also argues that she has suffi-

---

1. The following facts are gleaned from Plaintiff's Complaint (D.E. 1) and are deemed to be true for purposes of Carnival's Motion.

2. Count V is for negligence against Dr. Mbuthuma and/or Defendant Dr. Doe, and Count VI is for negligence against Nurse Doe. Counts V and VI are not at issue in Carnival's Motion and are not addressed in this Order.

3. Section II of Plaintiff's Complaint is titled "The Time Has Come to Overturn an Outdated Precedent," referring to *Barbetta,* and attempts to establish a foundation for the basis of Counts I and II. Carnival moves to strike Section II of Plaintiff's Complaint as an inappropriate legal argument. (*See* D.E. 12.)

ciently pled negligence and negligent hiring, training, and retention. (*Id.* at 18–19.) She moves separately to conduct limited discovery "in order to show this Honorable Court that the underpinnings of *Barbetta* are inherently flawed." (D.E. 18 at 2.)

With respect to Count III, Plaintiff argues that this Court has recognized a viable cause of action for apparent agency. (Response at 16 (citing *Franza v. Royal Caribbean Cruises,* 948 F.Supp.2d 1327, 1332–33 (S.D.Fla.2013)); *Farrell v. Royal Caribbean Cruises, Ltd.,* No. 11–24399-CV, 2013 WL 178242, at *4 (S.D.Fla. Jan. 2, 2013).) Finally, with respect to Count IV, Plaintiff argues that she has sufficiently plead joint venture. (*Id.* at 20.)

## II. Legal Standard

Under Federal Rule of Civil Procedure 12(b)(6), a court may dismiss a claim for "failure to state a claim upon which relief can be granted." "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal,* 556 U.S. 662, 678, 129 S.Ct. 1937, 173 L.Ed.2d 868 (2009) (quoting *Bell Atlantic Corp. v. Twombly,* 550 U.S. 544, 570, 127 S.Ct. 1955, 167 L.Ed.2d 929 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* In reviewing whether a complaint should be dismissed, the Court accepts the facts alleged in the Complaint as true, and construes all reasonable inferences therefrom in the light most favorable to Plaintiffs. *Bank v. Pitt,* 928 F.2d 1108, 1109 (11th Cir.1991).

## III. Discussion

### A. Count I: Negligence

■■■ Count I of Plaintiff's Complaint alleges negligence against Carnival. (D.E.

1 at 11.) Where an alleged tort occurs aboard a ship sailing upon navigable waters, federal maritime law governs the resulting substantive claims. *Wilkinson v. Carnival Cruise Lines, Inc.,* 920 F.2d 1560, 1564 n. 10 (11th Cir.1991). "To satisfy the burden of proof in a negligence action, plaintiff must show: (1) that defendant owed plaintiff a duty; (2) that defendant breached that duty; (3) that this breach was the proximate cause of plaintiff's injury; and (4) that plaintiff suffered damages." *Isbell v. Carnival Corp.,* 462 F.Supp.2d 1232, 1236 (S.D.Fla.2006) (citing *Hasenfus v. Secord,* 962 F.2d 1556, 1559–60 (11th Cir.1992)). Under general maritime law, a cruise ship owner owes a duty to its passengers to exercise "reasonable care under the circumstances." *See Kermarec v. Compagnie Generale Transatlantique,* 358 U.S. 625, 632, 79 S.Ct. 406, 3 L.Ed.2d 550 (1959). Plaintiff alleges Carnival breached this duty in the following ways:

a. Failure to timely diagnose and/or treat Plaintiff's medical condition; and/or

b. Failure to timely divert the vessel or to evacuate the Plaintiff by helicopter or speed boat; and/or

c. Failure to provide Plaintiff with prompt, proper and adequate medical care, which aggravated Plaintiff's medical condition and caused her additional pain, disability and suffering; and/or

d. Failure to hire properly qualified ship's doctors and/or nurses; and/or

e. Failure to hire properly licensed ship's doctors and/or nurses which had the proper licenses in the jurisdiction of the flag of the ship on which they were hired to provide medical care, so as to be in violation of the law of the flag

country with respect to the provision of medical services, and/or

f. Failure to disclose to passengers that the ship's doctors and/or nurses: did not have the proper licenses in the jurisdiction of the flag of the ship on which they were hired to provide medical care; and were not properly qualified; and/or

g. Negligent reliance on the medical opinions and/or advice and/or instructions of ship's doctors who were: (1) not properly qualified; and/or (2) failed to have the proper licenses in the jurisdiction of the flag of the ship on which they were hired to provide medical care; and/or

h. Negligent retainer of ship's doctors and nurses which did not have the proper licenses in the jurisdiction of the flag of the ship on which they were hired to provide medical care, and/or

i. Negligent administration of medications, made up of a hazardous combination of pain killers, including Ketorolac, a drug banned in several countries, with recognized adverse reactions; and/or

j. Failure to use reasonable care to provide and maintain an adequate ship's medical facility, fit with proper and adequate crew and equipment; and/or

k. Failure to provide adequate training, instruction and supervision to crew members, particularly medical staff; and/or

l. Failure to provide medical staff and other crew members reasonable hours of employment so as not to overwork them to the point of not being physically fit to carry out their duties; and/or

m. Failure to have proper and adequate procedures and/or equipment in effect to handle Donna Mumford's medical condition; and/or

n. Failure to have an adequate number of medical employees to handle medical emergencies. Specifically, it is unrealistic to have a medical team consisting of one or two doctors or three to four nurses to perform all the services required on a ship carrying thousands of passengers and crew; and/or

o. Failure to have "Face to Face Telemedicine" tools in place; and/or

p. Failure to have adequate procedures, policies or tools in place to ensure adequate communication with Carnival's shoreside medical department; and/or

q. Failure to furnish such aid and assistance as ordinarily prudent persons would render under similar circumstances.

r. Failure to have a CT or CAT Scan or other diagnostic imaging technology that would allow the vessel to have properly diagnosed and thereby treated Plaintiff's condition.

(Complaint ¶¶ 40(a)–(r).)

■■ A carrier owes its sick and injured passengers a duty to exercise "reasonable care to furnish such aid and assistance as ordinarily prudent persons would render under similar circumstances," but it owes no duty to maintain a doctor on board for the benefit and convenience of its passengers. *Barbetta v. S/S Bermuda Star*, 848 F.2d 1364, 1369, 1371 (5th Cir. 1988). Thus, a carrier owes no duty to train shipboard medical staff. *See Wajnstat v. Oceania Cruises, Inc.*, No. 09–21850, 2011 WL 465340, at *3 (S.D.Fla. Feb. 4, 2011). Nor does it owe a duty to provide medical transportation, *Gliniecki v. Carnival Corp.*, 632 F.Supp.2d 1205, 1207–08 (S.D.Fla.2009), or to provide medical equipment such as wheelchairs, *Walsh v. NCL (Bahamas) Ltd.*, 466 F.Supp.2d 1271, 1273 (S.D.Fla.2006). Furthermore, a carrier is not required to promulgate or enforce particular medical directives re-

garding patient care, and it is thus not negligent if it fails to do so. *Hajtman v. NCL (Bahamas) Ltd.,* 526 F.Supp.2d 1324, 1327 (S.D.Fla.2007).

■ If a carrier undertakes to employ a doctor aboard ship for its passengers' convenience, the carrier has a duty to employ a doctor who is competent and duly qualified. *Barbetta,* 848 F.2d at 1369. If the carrier breaches its duty, it is responsible for its own negligence. *Id.* However, "[t]he fact that the physician errs in his treatment does not prove that he was incompetent or that the company was negligent in appointing him." *Jackson v. Carnival Cruise Lines, Inc.,* 203 F.Supp.2d 1367, 1375 (S.D.Fla.2002) (quoting *Di Bonaventure v. Home Lines, Inc.,* 536 F.Supp. 100, 103 (E.D.Pa.1982)).

■ Here, Plaintiff's allegations that Carnival failed to properly diagnose, treat, provide medical care, divert, transport, medicate, provide and maintain medical facilities and equipment, provide procedures regarding treatment and communication with onshore medical departments, warn of allegedly unqualified doctors and nurses, and/or train, instruct, and supervise medical personnel are all predicated on duties of care that are not recognized under maritime law. *See, e.g., Franza,* 948 F.Supp.2d at 1331; *Farrell,* 2013 WL 178242, at *3. Accordingly, they are insufficient to sustain an actionable negligence claim.

■ The Complaint likewise fails to state a claim for negligent hiring and retention. "In order to state a cause of action for the tort of negligent hiring or retention recognized in Florida, a plaintiff must allege facts showing that the employer was put on notice of the harmful propensities of the employee." *Stires v. Carnival Corp.,* 243 F.Supp.2d 1313, 1318 (M.D.Fla.2002) (citing *Willis v. Dade Cnty.*

*Sch. Bd.,* 411 So.2d 245, 246 (Fla.Dist.Ct. App.1982)).

The principal difference between negligent hiring and negligent retention as a basis for employer liability is the time at which the employer is charged with knowledge of the employee's unfitness. *Garcia v. Duffy,* 492 So.2d 435, 438 (Fla. 2d DCA 1986). Negligent hiring occurs when, prior to the time the employee is actually hired, the employer knew or should have known of the employee's unfitness, and the issue of liability primarily focuses upon the adequacy of the employer's pre-employment investigation into the employee's background. *Id.* (citing *Williams v. Feather Sound, Inc.,* 386 So.2d 1238 (Fla. 2d DCA 1980)).

*Id.* "Liability for negligent ... retention ... occurs after employment begins, where the employer knows or should know of an employee's unfitness and fails to take further action such as investigating, discharge or reassignment." *Franza,* 948 F.Supp.2d at 1334 (quoting *Malicki v. Doe,* 814 So.2d 347, 362 n. 15 (Fla.2002)). The Complaint fails to allege any facts that support her claims for negligent hiring and retention. It fails to allege that Carnival knew or should have known of the unfitness or harmful propensities of its medical staff members. *See id.* Nor does it include any facts as to why the medical staff was not competent or duly qualified either before being hired or during the period of employment other than that the "ship's doctors and nurses ... did not have the proper licenses in the jurisdiction of the flag of the ship on which they were hired to provide medical care." (*See* Complaint ¶ 40(e)–(h).) However, "[g]eneral Maritime Law applies in this case and Maritime Law does not require that Carnival hire medical personnel who are licensed ... in the jurisdiction of the flag of the ship. Maritime Law simply requires that

if Carnival chooses to hire medical personnel, it must hire people that are competent and qualified. *See Barbetta*, 848 F.2d at 1371." *Rinker v. Carnival Corp.*, 753 F.Supp.2d 1237, 1242–43 (S.D.Fla.2010). Thus, Plaintiff's negligence claims based on an alleged duty to hire and retain medical personnel licensed in the jurisdiction of the flag of the ship are dismissed because no such duty exists. *See id.; see also Gavigan v. Celebrity Cruises, Inc.*, 843 F.Supp.2d 1254, 1261–62 (dismissing claims for negligent selection and retention where complaint lacked (1) "sufficient factual information about what Celebrity knew a doctor had done or not done and when Celebrity possessed that information," and (2) "factual allegations that would support a claim that any doctor performed his or her duties so poorly that Celebrity should have *immediately* relieved the doctor of all responsibility for treating any other patients.")

For all these reasons, the Court grants Carnival's Motion to Dismiss as to Count I.

### B. Count II: Vicarious Liability for Negligence of Defendant Medical Staff based on Respondeat Superior

The prevailing conclusion in this District and the majority of other jurisdictions is that a cruise line cannot be held vicariously liable for the negligence of its ship's doctor in the care and treatment of passengers. *Huang v. Carnival Corp.*, 909 F.Supp.2d 1356, 1360, (S.D.Fla.2012) (citing *Barbetta v. S/S Bermuda Star*, 848 F.2d 1364, 1372 (5th Cir.1988)); *see also Peterson v. Celebrity Cruises, Inc.*, 753

F.Supp.2d 1245, 1247 (S.D.Fla.2010); *Ridley v. NCL (Bahamas) Ltd.*, 824 F.Supp.2d 1355, 1362 (S.D.Fla.2010); *Hesterly v. Royal Caribbean Cruises, Ltd.*, 515 F.Supp.2d 1278, 1284 (S.D.Fla.2007); *Doonan v. Carnival Corp.*, 404 F.Supp.2d 1367, 1370–71 (S.D.Fla.2005); *Mascolo v. Costa Crociere, S.p.A.*, 726 F.Supp. 1285, 1286 (S.D.Fla.1989). The justifications for this rule are the cruise line's lack of control over the doctor-patient relationship and the cruise line's failure to possess expertise in supervising the doctor in his practice of medicine. *Doonan*, 404 F.Supp.2d at 1370 (citing *Barbetta*, 848 F.2d at 1369–70).

Consistent with the foregoing, the Court finds Plaintiff's claim of vicarious liability based on respondeat superior/actual agency unsustainable as a matter of law. Although Plaintiff urges the Court to depart from the majority rule and find respondeat superior/actual agency to be a viable theory, the Court finds no sufficiently persuasive reason to do so.

On this basis the Court grants Carnival's Motion to Dismiss as to Count II. Moreover, because the Court declines to depart from *Barbetta* and its progeny and has dismissed Counts I and II accordingly, the Court further concludes that: (1) Plaintiff's Motion to Conduct Limited Discovery Regarding the Issue of Carnival's Control Over the Medical Defendants (D.E. 18) is DENIED;[4] and (2) Carnival's Motion to Strike Section II of Plaintiff's Complaint as an inappropriate legal argument (D.E. 12) is DENIED AS MOOT.[5]

---

4. As previously stated, Plaintiff filed her Motion to Conduct Limited Discovery "in order to show this Honorable Court that the underpinnings of *Barbetta* are inherently flawed," (D.E. 18 at 2). *See* Section I, *supra*.

5. As previously noted, Section II of Plaintiff's Complaint is titled "The Time Has Come to

Overturn an Outdated Precedent," referring to *Barbetta*, and attempts to establish a foundation for the basis of Counts I and II. *See* note 3, *supra*. Section II of the Complaint consists of nine (9) individually-numbered paragraphs explaining Plaintiff's position with

## C. Count III: Vicarious Liability based on Apparent Agency

■ Although the prevailing conclusion is that a carrier cannot be held vicariously liable for the negligence of its medical staff based on respondeat superior/actual agency, some courts in this District have nonetheless concluded that a carrier may be held vicariously liable on a theory of "apparent" agency. *See, e.g., Peterson v. Celebrity Cruises, Inc.,* 753 F.Supp.2d 1245, 1248 (S.D.Fla.2010); *Hajtman,* 526 F.Supp.2d at 1328.[6] Apparent agency is established when (1) an alleged principal makes some sort of manifestation causing a third party to believe that an alleged agent had authority to act for the benefit of the principal; (2) such belief was reasonable; and (3) the claimant reasonably acted on such belief to his detriment. *Doonan v. Carnival Corp.,* 404 F.Supp.2d 1367, 1371 (S.D.Fla.2005).

■ In *Farrell,* this Court considered—and rejected—an apparent agency claim identical in all relevant respects to that in the case at bar. *See* 11–24399–CIV–LENARD/O'SULLIVAN, D.E. 20 at 10–13 (S.D.Fla. Dec. 6, 2011).

Assuming *arguendo* that the Amended Complaint establishes the first and second elements of apparent agency—*i.e.,* that Royal Caribbean made certain manifestations leading Plaintiff to reasonably believe that the medical staff were Royal Caribbean's agents—Plaintiff raises no allegations indicating how she "acted" or relied on her purported belief. The Amended Complaint avers only that "[a]t all material times hereto, Plaintiff reasonably relied on the representations to her detriment that Defendants ... were employees and/or agents and/or servants of Defendant, ROYAL CARIBBEAN." (Amended Complaint, D.E. 20 ¶¶ 33, 43.) While Plaintiff alleges that her "reasonable reliance was detrimental because it significantly delayed [the plaintiff] from receiving proper medical treatment" (*id.* ¶¶ 35, 45), Plaintiff provides no indication of how she acted or relied on her belief in the first place. Accordingly, the Court finds Plaintiff's allegations insufficient to state a claim. *See, e.g., Gavigan v. Celebrity Cruises, Inc.,* 843 F.Supp.2d 1254, 1262–63 (S.D.Fla.2011) ("While Plaintiff alleged that Gavigan 'relied upon [Celebrity's] representations' that the doctors were Celebrity's agents, the Amended Complaint fails to contain the necessary factual allegations describing his reliance

respect to the *Barbetta* rule and outlining her rationale for rejecting it.

**6.** However, the Court notes that "the trend does seem to be toward reading the *Barbetta* Rule itself as a bar to any form of vicarious liability for the actions of medical staff, regardless of the doctrinal label affixed to the particular claim." *Huang,* 909 F.Supp.2d at 1361 (citing *Wajnstat,* 2011 WL 465340, at *4) ("The Rule of *Barbetta* does not allow for liability under an apparent agency theory since the doctrine of apparent agency is simply a form of *respondeat superior* liability ... The rationale of the court in *Barbetta* does not leave room for pleading around the rule, by labeling the legal theory "apparent authority" as opposed to '*respondeat superior.*' ") (citing 3 Am.Jur.2d *Agency* 262); *Benedict on Admi-*

*ralty* § 9.03[b] ("It seems illogical for a court to allow a plaintiff to prevail against a defendant on a claim of apparent agency when that same defendant could not be found liable if the doctor was their actual agent."); *see also Balachander v. NCL (Bahamas) Ltd.,* 800 F.Supp.2d 1196, 1204–05 (S.D.Fla.2011) ("Plaintiff's claims alleging apparent agency, agency by estoppel, and joint venture are akin to claims under the doctrine of *respondeat superior* and fail as a matter of law. Moreover, under any theory, it is inconsistent with the law of this Circuit to hold a cruise line liable for the negligence of a ship doctor. Under any of these theories, the same rationale applies—the cruise line lacks control over the doctor. Control is an element of any claim of agency or joint venture.").

on the *agency* relationship to his detriment. Moreover, simply repeating the term 'reliance' or the phrase 'relied upon' throughout the pleadings fails to satisfy the burden here. Facts, rather than conclusory allegations are necessary to avoid dismissal of this claim." (citations omitted)); *see also Rinker v. Carnival Corp.*, 836 F.Supp.2d 1309, 1319 (S.D.Fla.2011) ("Plaintiff's husband does not state that, had he known the doctor and nurses were independent contractors, he would not have sought their medical help for his wife. Thus, it is not clear how he relied."); *Warren v. Ajax Navigation Corp.*, No. 91–0230–CIV, 1995 WL 688421, at *3–4 (S.D.Fla. Feb. 3, 1995) ("Plaintiff must ... show ... that he relied or changed his position in reliance on his alleged belief that Dr. Nodarse was defendants' agent.... Plaintiff has not provided evidence sufficient to show that he selected the cruise in reliance that Dr. Nodarse was an agent authorized to act on behalf of the shipowners.").

2013 WL 178242, at *4. Because the claim in the case at bar is identical in all relevant respects to that in *Farrell*, the same logic applies. Plaintiff has not alleged how she relied upon the alleged apparent agency because, for example, she has not alleged how, had she known that the doctor(s) and nurse were not Carnival's agents, she would have rejected the medical staff's advice or treatment. Accordingly, assuming without deciding that a viable maritime claim for apparent agency survives *Barbetta*, plaintiff fails to sufficiently plead it.

Thus, the Court grants Carnival's Motion to Dismiss Count III of the Complaint.

### D. Count IV: Joint Venture between Carnival and the Medical Defendants

■ In order to establish liability on a theory of "joint venture," a plaintiff must prove (1) a community of interest in the performance of a common purpose; (2) joint control or right of control; (3) a joint proprietary interest in the subject matter; (4) a right to share in the profits; and (5) a duty to share in any losses which may be sustained. *Fojtasek v. NCL (Bahamas) Ltd.*, 613 F.Supp.2d 1351, 1357 (S.D.Fla. 2009).

This Court recently addressed the sufficiency of a joint-venture claim identical in all relevant respects to the one pled in this case. *See Huang*, 909 F.Supp.2d at 1361–62. In *Huang*, the plaintiff allegedly fell on a Carnival Cruise Ship and received substandard care from the ship's medical staff. *Id.* at 1358. The plaintiff claimed that Carnival was liable for the negligence of the medical personnel based on, among other things, a joint-venture theory. *Id.* at 1361. The plaintiff's allegations were materially identical to those raised in the case at bar. *See Huang v. Carnival Corp.*, No. 12–cv–23345, D.E. 1 (S.D.Fla. Sep. 13, 2012). This Court dismissed the plaintiff's claim and found as follows:

Plaintiff cannot make out a claim for liability under the theory that Carnival and its shipboard medical staff were engaged in a joint venture to provide medical services to passengers aboard the Carnival Miracle....

Plaintiff does not allege any facts that might plausibly establish the existence of a joint venture between Carnival and the shipboard medical staff that attended him.... Most of the statements made in Count V of the Complaint are mere recitals of the elements of a joint venture, and are thus not entitled to the presumption of truth. *See Gentry v. Carnival Corp.*, No. 11–21580, 2011 WL 4737062 (S.D.Fla. Oct. 5, 2011). For example, Paragraph 55 recites that, de-

fendants: "Had a joint proprietary interest," D.E. 1 ¶ 55(b); "Had a joint control or right of control," *id.* ¶ 55(c); "Had a right to share in the profits of the joint venture," *id.* ¶ 55(d); and "Would share losses which may have been sustained," *id.* ¶ 55(e).

Plaintiff's allegations as to joint proprietary interest and joint control cannot plausibly satisfy those elements. Plaintiff alleges that "Carnival had the interest in the money it devoted to setting up the medical facility and Defendants William Pretorius, Jacqueline Gobeil, and Bryan Patiu had a proprietary interest in the time and labor expended in operating the ship's medical facility." *Id.* ¶ 54. But a joint proprietary interest "requires joint ownership of the subject matter of the contract," *Gibson v. NCL (Bahamas) Ltd.*, No. 11–24343, 2012 WL 1952667, at *8 (S.D.Fla. May 30, 2012), whereas all that Plaintiff pleads is a division of responsibilities. He further states, without any support, that "a duty to share losses actually and impliedly exists as a matter of law in a situation where one party supplies the labor, experience and skill, and the other the necessary capital." *Id.* Plaintiff's allegations fall far short of the standard set in maritime decisions permitting joint venture claims, the vast majority of which concerned onshore excursion companies sharing a symbiotic ticketing and programming relationship with the cruise lines whose passengers they served. *See, e.g., Gibson,* 2012 WL 1952667, at *8; *Gentry,* 2011 WL 4737062, at *7.

*Huang,* 909 F.Supp.2d at 1361–62. *See also Farrell,* 2013 WL 178242, at *5–6 (rejecting joint venture claim materially identical to that in *Huang* and the case at bar).

For the same reasons articulated in *Huang,* the Court finds Plaintiff's identical allegations (*see* Complaint, D.E. 1 ¶¶ 65–74) insufficient to sustain a joint-venture claim in this case.

On this basis, the Court grants Carnival's Motion to Dismiss as to Count IV.

## V. Conclusion

Accordingly, it is hereby **ORDERED AND ADJUDGED** that:

1. Defendant Carnival Corp.'s Motion to Dismiss Plaintiff's Complaint (D.E. 11), filed August 26, 2013, is **GRANTED;**

2. Counts I, II, III, and IV of Plaintiff's Complaint (D.E. 1), filed July 19, 2013, are **DISMISSED;**

3. Plaintiff's Motion to Conduct Limited Discovery Regarding the Issue of Carnival's Control Over the Medical Defendants (D.E. 18), filed October 2, 2013, is **DENIED;** and

4. Defendant Carnival Corp.'s Motion to Strike Section II of Plaintiff's Complaint (D.E. 12), filed August 26, 2013, is **DENIED AS MOOT.**