# SIXTH DISTRICT COURT OF APPEAL
## STATE OF FLORIDA

_____

Case No. 6D2025-0451
Lower Tribunal No. 2022-CA-001383

_____

BRAYAN A. SAGASTUME MIRLALDA, CONCRETE HOLDINGS & SERVICES, LLC, a/k/a and/or d/b/a C & C CONCRETE PUMPING, C&C CONCRETE PUMPING OF ORLANDO, INC., a/k/a and/or d/b/a C&C CONCRETE PUMPING OF ORLANDO, C & C SERVICES ORLANDO, LLC, a/k/a and/or d/b/a C&C CONCRETE PUMPING OF ORLANDO, C&C CONCRETE PUMPING OF TAMPA, LLC, C & C SERVICES GROUP, LLC, and JOSE CANCIO,

Appellants

v.

STAFFORD A. MITCHELL, JR.,

Appellee.

_____

Appeal pursuant to Fla. R. App. P. 9.130 from the Circuit Court for Orange County.
Brian S. Sandor, Judge.

February 27, 2026

NARDELLA, J.

When a defendant's negligent actions are so outrageous in character and so extreme in degree that an average member of the community would exclaim, "Outrageous!," then the law may move beyond merely compensating the plaintiff to penalizing the defendant in the form of punitive damages. The trial court found this is such a case. It is not.

## Background

After moving from New York to Miami, Brayan Sagastume Mirlalda ("Sagastume") went to work for Concrete Holdings & Services, LLC ("C&C") as a mechanic. A year later, he was transferred to one of C&C's subsidiaries, C&C Concrete Pumping of Tampa, LLC ("C&C Tampa"), to operate a concrete pump trailer.

In this position, he traveled to Orlando on December 30, 2020, to work on the I-4 Ultimate construction project. After completing his work that day, Sagastume began to drive through the construction area completely unaware that the pipe attached to the back of his trailer had come unsecured and was sticking out to the side. That pipe struck another worker, Stafford A. Mitchell, Jr. ("Mitchell"), from behind and hit two parked vehicles.

An injured Mitchell later sued Sagastume, C&C, and C&C Tampa (collectively, "Defendants") for various forms of negligence, including claims of negligent hiring, retention, and supervision against C&C and C&C Tampa (collectively, "C&C Contractors"). Eventually, Mitchell sought more than compensation for his injuries and moved for leave to assert claims for punitive damages against Defendants. As for Sagastume, Mitchell argued that he was grossly negligent because, in addition to negligently operating his vehicle on the day of the accident, he: 1) had a history of driver's license suspensions; 2) was driving on an expired license when the accident occurred; and 3) had a similar accident two days

earlier, on December 28, 2020.  As for C&C Contractors, Mitchell argued that they were directly and vicariously liable for punitive damages.  He argued that they were directly liable because their managing agents, Jose Cancio[1] and Mario Penzo[2]: 1) consented or ratified the decision to hire Sagastume, despite his driving record; 2) retained Sagastume despite the December 28th accident; and 3) rehired Sagastume following the December 30th accident.  Mitchell also argued that C&C Contractors were vicariously liable based on Sagastume's gross negligence and their negligent hiring, retention, and supervision of Sagastume.  Defendants opposed the motion, arguing that the evidence on which Mitchell relied could not support a claim for punitive damages.[3]

---

[1] Mr. Cancio owns C&C Contractors.

[2] Mr. Penzo is the chief financial officer for C&C Contractors.

[3] Defendants also challenged the veracity of the evidence Mitchell presented in support of his claim that Sagastume caused a similar accident on December 28th. In doing so, they presented compelling evidence that the accident report relied upon by Mitchell's counsel was unreliable.  While this raises an interesting issue about the trial court's consideration of the evidence at this stage of the proceeding, it is one we need not and do not answer today because, as discussed below, even if Sagastume was involved in a similar accident on December 28th, we still find Mitchell has not shown that he has a right to proceed with a claim for punitive damages. Nevertheless, we find it necessary to offer this reminder coupled with this caution: while an attorney's role as a zealous advocate is robust, it must remain subordinate to their duty as an officer of the court.  When a lawyer submits evidence that they know is false, they cease to be an advocate and become an active participant in fraud upon the court.

After a hearing, the trial court granted Mitchell's motion. As for Sagastume, the trial court found that his "decision to continue driving with an invalid and/or expired driver's license, knowing that he had a prior substantially similar accident just two days prior to this accident[,] and his history of license suspensions was the willful and wanton conduct that subjects his conduct to punitive damages." As for Mitchell's claim for direct liability against C&C Contractors, the trial court found:

> Here, the policy makers within the corporation[,] such as the CFO, Mario Penzo, and owner, Jose Cancio, engaged in such tortious, flagrant, and grossly negligent conduct, by consenting to and/or ratifying the decision to hire, retain, and allow Sagastume to continue to drive its commercial vehicle, including rehiring him after this accident even though his driver's license was still invalid. As such, the Plaintiff has established a reasonable basis for recovery of punitive damages based on direct liability.

Finally, with respect to Mitchell's claim for vicarious liability against C&C Contractors, the trial court found:

> Here, Sagastume's decision to continue driving with an invalid and/or expired driver's license, knowing that he had a prior substantially similar accident just two days prior to this accident[,] and his history of license suspensions was the willful and wanton conduct that subjects his conduct to punitive damages. This Court has already found as a matter of law that the [C&C Contractors] have at least some fault that rises to ordinary negligence. As such, the Plaintiff has established a reasonable basis for recovery of punitive damages based on vicarious liability.

Our review of an order granting a motion for leave to assert a claim for punitive damages is subject to de novo review. *Mercer v. Saddle Creek Transp.,*

4

*Inc.*, 389 So. 3d 774, 776 (Fla. 6th DCA 2024) (citing *Est. of Despain v. Avante Grp., Inc.*, 900 So. 2d 637, 644 (Fla. 5th DCA 2005)).

The Law

Defendants contend that Mitchell failed to present a reasonable basis to recover punitive damages against Sagastume and that no view of the evidence supports the conclusion that Sagastume's conduct constituted gross negligence warranting exposure to a claim for punitive damages. We agree.

A plaintiff's ability to assert a claim for punitive damages is governed by section 768.72, Florida Statutes, which provides that "no claim for punitive damages shall be permitted unless there is a reasonable showing by evidence in the record or proffered by the claimant which would provide a reasonable basis for recovery of such damages." § 768.72(1), Fla. Stat. (2020); *see Globe Newspaper Co. v. King*, 658 So. 2d 518, 519 (Fla. 1995) (explaining that section 768.72 creates "a substantive legal right not to be subject to a punitive damages claim . . . until the trial court makes a determination that there is a reasonable evidentiary basis for recovery of punitive damages").

Evidence presented in support of a claim for punitive damages must reasonably demonstrate that the defendant was "guilty of intentional misconduct or gross negligence." § 768.72(2), Fla. Stat. Here, Mitchell claims Defendants were grossly negligent. Gross negligence is defined as "conduct [that] was so reckless or

5

wanting in care that it constituted a conscious disregard or indifference to the life, safety, or rights of persons exposed to such conduct." § 768.72(2)(b), Fla. Stat.

In deciding whether to permit a claim for punitive damages, the trial court acts as "a 'gatekeeper' to assess whether the claimant has shown a reasonable evidentiary basis for the recovery of punitive damages." *Hosp. Specialists, P.A. v. Deen*, 373 So. 3d 1283, 1287 (Fla. 5th DCA 2023) (citing *Varnedore v. Copeland*, 210 So. 3d 741, 745 (Fla. 5th DCA 2017)).[4]  In performing this function, the trial court must first ensure that each piece of evidence presented in support of a claim for punitive damages is relevant to the underlying claim of negligence and resulting injury. *See State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 422–23 (2003) ("A defendant's dissimilar acts, independent from the acts upon which liability was premised, may not serve as the basis for punitive damages.  A defendant should be punished for the conduct that harmed the plaintiff, not for being an unsavory

---

[4] The Fourth District has taken a broader view of the trial court's gatekeeping function, concluding that the trial court must "make a preliminary determination of whether a reasonable jury, viewing the totality of proffered evidence in the light most favorable to the movant, could find by clear and convincing evidence that punitive damages are warranted." *Fed. Ins. Co. v. Perlmutter*, 376 So. 3d 24, 34 (Fla. 4th DCA 2023) (emphasis removed).  In reaching this conclusion, the Fourth District certified conflict with decisions from the Second and Fifth Districts and the matter is under review with the Florida Supreme Court.  *Id*. at 38, *review granted*, No. SC2024-0058, 2024 WL 4948685 (Fla. Dec. 3, 2024).  We, though, need not weigh in on this issue because, as Defendants argue, "the record and proffered evidence do not establish a reasonable showing that Mitchell could recover punitive damages under either quantum of proof."  We, therefore, will not apply the broader standard articulated in *Perlmutter*.

individual or business. Due process does not permit courts, in the calculation of punitive damages, to adjudicate the merits of other parties' hypothetical claims against a defendant under the guise of the reprehensibility analysis[.]"); *Ebsary Found. Co. v. Servinsky*, 378 So. 3d 625, 626–27 (Fla. 4th DCA 2023) (reversing order granting motion for leave to assert claim for punitive damages against employer, in part, because some evidence plaintiff proffered, namely the employee's actions after being hired, were "not directly related to the allegation that [the employer] was grossly negligent in hiring [the employee]"); *HRB Tax Grp., Inc. v. Fla. Investigation Bureau, Inc.*, 360 So. 3d 1159, 1162 (Fla. 4th DCA 2023) ("[T]he trial court improperly considered allegations and evidence not relevant to the claim for which punitive damages were sought."); *see also Hardin v. R.J. Reynolds Tobacco Co.*, 314 So. 3d 584, 589 (Fla. 3d DCA 2020) (affirming trial court's entry of directed verdict in defendant's favor on claim for punitive damages because plaintiff failed to present sufficient evidence establishing a "link" between defendant's misconduct and the product liability claim and decedent's injuries); Fla. Std. Jury Instr. (Civ.) 503.1 (instructing that punitive damages are warranted against defendant if the jury finds by clear and convincing evidence that defendant was guilty of intentional misconduct or gross negligence, which was a substantial cause of loss or injury to the plaintiff). If it is not relevant, it should not be considered. Only after evidence is determined to be relevant should it be viewed in a light most favorable to the plaintiff, without weighing it or evaluating witness

credibility. *Mercer*, 389 So. 3d at 777 (explaining courts view evidence in light most favorable to party moving for punitive damages without weighing it or evaluating witness credibility) (citing *Perlmutter*, 376 So. 3d at 34; *701 Palafox, LLC v. Scuba Shack, Inc.*, 367 So. 3d 624, 627 (Fla. 1st DCA 2023); *Est. of Despain*, 900 So. 2d at 644).

Ultimately, "punitive damages are reserved for truly culpable behavior and are intended to express society's collective outrage." *Grove Isle Ass'n v. Lindzon*, 350 So. 3d 826, 830 (Fla. 3d DCA 2022) (quoting *KIS Grp., LLC v. Moquin*, 263 So. 3d 63, 65–66 (Fla. 4th DCA 2019)). Therefore, the relevant conduct at issue must be "so outrageous in character, and so extreme in degree . . . [that] the facts [of the case] to an average member of the community would arouse his resentment against the actor, and lead him to exclaim, 'Outrageous!'" *River Front Master Ass'n v. N. Inv. Grp., LLC*, 399 So. 3d 1106, 1108 (Fla. 3d DCA 2024) (quoting *Cleveland Clinic Fla. Health Sys. Nonprofit Corp. v. Oriolo*, 357 So. 3d 703, 706 (Fla. 4th DCA 2023)). The relevant conduct here does not meet this stringent standard.

<u>Sagastume's Liability</u>

Mitchell alleges that Sagastume failed to secure a pipe before driving through a construction site and that his failure is so outrageous that he deserves punishment. According to Mitchell, Sagastume should be punished because of his past driving record, his decision to drive on an expired license, and the possibility that he was in an accident two days earlier. But these points and the evidence underpinning them

8

do not provide a reasonable basis for Mitchell to recover punitive damages against Sagastume.

As explained above, before we consider the evidence in the light most favorable to Mitchell, we must first determine whether it is relevant. And Sagastume's past driving record is not. While Mitchell submitted evidence showing New York suspended Sagastume's driver's license several times, nothing in his record shows that the suspensions were issued for moving violations or reckless driving. Rather, the records reveal New York suspended Sagastume's license for administrative issues, such as lapsed insurance, failure to pay fines,[5] and failure to answer a summons. Even more removed, the issues leading to the suspensions were resolved and Sagastume's New York driver's license was reinstated months before the accident. None of this evidence has anything to do with Sagastume's actions being grossly negligent on December 30th.

Likewise, Sagastume's decision to drive days after his New York driver's license expired is irrelevant. While Sagastume's operation of a vehicle with an expired license was unlawful, *see* § 322.065, Fla. Stat. (person who operates vehicle on the roadways with license that has been expired for six months or less commits a noncriminal traffic infraction), the expiration of his license alone is not evidence of his inability to operate a concrete pump trailer. That malfeasance alone, which is

---

[5] According to Sagastume, the fines stemmed from parking issues.

unrelated to Sagastume's failure to properly secure a pipe on the concrete pump trailer, does not support a finding of gross negligence.[6] *See Mercer*, 389 So. 3d at 778 (concluding that while federal regulations forbid commercial truck drivers from using hand-held cell phones "the mere use of a cell phone while driving a truck [does not] automatically provide[ ] a reasonable basis for a plaintiff to seek punitive damages"); *Cleveland Clinic*, 357 So. 3d at 706 ("Allegations of misfeasance or malfeasance, or breaches of a professional standard of care, cannot without more be converted into a claim for punitive damages simply by labelling them as 'grossly' negligent." (citing *Weller v. Reitz*, 419 So. 2d 739, 741 (Fla. 5th DCA 1982))).

Finally, none of the evidence implying Sagastume may have been in a similar accident two days prior supports a finding of gross negligence. While having similar accidents just two days apart may be concerning, that fact, without more, does not support a finding that the driver involved in both accidents was grossly negligent. Here, there is no evidence detailing what caused the pipe to come unsecured during the December 28th accident. It may have come loose for a reason unrelated to Sagastume's actions, such as the unexpected failure of a part securing the pipe to the

---

[6] Mitchell also pointed to Sagastume's failure to obtain a Florida driver's license within thirty days of accepting employment in Florida. *See* § 322.031(1), Fla. Stat. (requiring nonresidents to obtain Florida driver's license within 30 days of accepting employment in Florida). Again, while Sagastume did not comply with section 322.031(1), his failure to do so does not mean he was unfit to operate a vehicle or the concrete pump trailer. Thus, it likewise does not support a finding of gross negligence.

trailer or the pipe being jolted loose by the rough surfaces of the construction zone. Without any evidence showing how the pipe came loose on December 28th, that accident cannot provide a reasonable basis to conclude Sagastume's actions on December 30th were grossly negligent. Indeed, under the facts here, the mere occurrence—or alleged occurrence—of a prior accident is not sufficient, without more, to demonstrate Sagastume acted in a grossly negligent way. *See Long v. Kropke*, 370 So. 3d 319, 322 (Fla. 4th DCA 2023) (finding plaintiff's failure to present specific evidence regarding prior incidents of speeding undermined claim to assert punitive damages against defendant); *Gulf Power Co. v. Kay*, 493 So. 2d 1067, 1075 (Fla. 1st DCA 1986) ("Gulf Power's knowledge of the two accidents at the pole in this case, in view of the lack of similarity of circumstances shown by the record before us, is not legally sufficient to support a finding of the gross and flagrant negligence required to support the award of punitive damages.").

None of the points, individually or collectively, on which the trial court relied to grant Mitchell's motion provides a reasonable basis to support a finding that Sagastume's conduct on December 30th was so reckless or wanting in care that it constituted a conscious disregard or indifference to the life or safety of the people exposed to such conduct. Put another way, there is nothing about the evidence on which Mitchell and the trial court relied that would cause an average member of the

11

community to reasonably exclaim, "Outrageous!"[7]  Therefore, the trial court erred

by granting Mitchell leave to assert a claim for punitive damages against Sagastume.

## C&C Contractors' Vicarious Liability

Since the trial court erred by granting Mitchell leave to assert a claim for

punitive damages against Sagastume, it also erred by granting him leave to assert a

claim for punitive damages against C&C Contractors based on a theory of vicarious

liability.  *See* § 768.72(3), Fla. Stat. (requiring employee to have engaged in

intentional misconduct or gross negligence before their employer can be subject to

a claim for punitive damages under a theory of vicarious liability).

## C&C Contractors' Direct Liability

The last issue is whether the trial court erred by granting Mitchell leave to

assert a claim for punitive damages against C&C Contractors based on a theory of

direct liability.  Defendants contend Mitchell failed to present evidence that C&C

Contractors were grossly negligent in hiring, retaining, and allowing Sagastume to

operate a company vehicle.  We agree.

A company can be held directly liable for punitive damages.

Under the direct theory, liability for gross negligence is established if the corporation itself engaged in conduct that was "so reckless or wanting in care that it constituted a conscious disregard or indifference

---

[7] On appeal, Mitchell points to other evidence in support of his claim for punitive damages against Sagastume.  The trial court, though, did not rely on this evidence when it granted Mitchell's motion.  As the trial court's ruling implies, none of the other evidence Mitchell presented reasonably supports a finding that Sagastume was grossly negligent.

12

to the life, safety, or rights of persons exposed to such conduct," and that conduct contributed to the loss of the injured party. Moreover, because a corporation cannot act on its own, "there must be a showing of willful and malicious action on the part of a managing agent of the corporation" to establish direct punitive liability.

*Five Fran, LLC v. Davis*, 404 So. 3d 581, 584 (Fla. 3d DCA 2025) (quoting *Fla. Power & Light Co. v. Dominguez*, 295 So. 3d 1202, 1205 (Fla. 2d DCA 2019)).

Mitchell's claim that C&C Contractors were grossly negligent because they failed to use appropriate practices when hiring Sagastume fails for a simple reason—Sagastume was not originally hired to operate C&C Contractors' vehicles. He was, instead, hired to work as a mechanic—a position he held for a year before being transferred to a driver position. There was, consequently, no need for C&C Contractors to scrutinize Sagastume's license or driving history before hiring him. As a result, Mitchell has not shown that C&C Contractors could be found grossly negligent for failing to scrutinize Sagastume's license or driving history when he was hired. *See Tallahassee Furniture Co. v. Harrison*, 583 So. 2d 744, 750 (Fla. 1st DCA 1991) ("[C]entral to the task of judging the employer's responsibility to investigate an employee's background is consideration of 'the type of work to be done by the employee.'" (quoting *Williams v. Feather Sound, Inc.*, 386 So. 2d 1238, 1240 (Fla. 2d DCA 1980))).

Mitchell's claim that C&C Contractors were grossly negligent because they failed to ensure Sagastume was properly trained and qualified to safely drive a vehicle and operate the concrete pump trailer fails because the evidence that Mitchell

13

relies on does not reasonably demonstrate that C&C Contractors were grossly negligent. First, the evidence shows that Sagastume was made a driver after the suspension of his New York driver's license was lifted. And, while Sagastume's New York driver's license expired days before the accident, a fact that, again, is irrelevant to what caused the accident, there is no evidence that the managing agents, Messrs. Cancio or Penzo, were aware of this fact or instituted a policy encouraging employees to continue driving despite such circumstances. Second, the evidence shows that Sagastume underwent training through the American Concrete Pumping Association. Third and finally, Mitchell presented no evidence that anyone at C&C Contractors, other than Sagastume, was aware of the December 28th accident—assuming it even occurred—and so there was no reason for the managing agents to take any corrective action.[8]

Based on this record, Mitchell has not shown that C&C Contractors could be found grossly negligent for allowing Sagastume to operate a company vehicle and concrete pump trailer. Certainly, Mitchell has not identified any "willful and

---

[8] The trial court also relied on evidence that another C&C entity hired Sagastume after the December 30th accident to support its finding of direct liability. Such post-accident evidence is irrelevant in establishing liability for punitive damages. *See Cleveland Clinic*, 357 So. 3d at 707 ("In finding sufficient evidence of ratification, the trial court relied exclusively on conduct that post-dated the health care providers' actions and the decedent's treatment and death. However, actions taken after the happening of a tortious act are not admissible on the issue of punitive damages, nor can those subsequent actions form the basis for bringing such a damage claim." (citing *Jones v. Alayon*, 162 So. 3d 360, 365–66 (Fla. 4th DCA 2015))).

14

malicious action on the part of a managing agent" of C&C Contractors. We, therefore, find the trial court erred in granting Mitchell leave to assert a claim for punitive damages against C&C Contractors based on a theory of direct liability.

For all the reasons discussed above, the trial court's order granting Mitchell's motion for leave to assert claims for punitive damages against Defendants is reversed in its entirety.

REVERSED.

WOZNIAK and BROWNLEE, JJ., concur.


Mihaela Cabulea, Joshua Golembe, and Alexis Nicole Clemente, of Butler Weihmuller Katz Craig LLP, Tampa, and Jeffrey R. Geldens, of Lewis Brisbois Bisgaard & Smith LLP, Coral Gables, for Appellants.

Jeremy K. Markman and Seth L. Smith, of King & Markman, P.A., Orlando, for Appellee.


NOT FINAL UNTIL TIME EXPIRES TO FILE MOTION FOR REHEARING
AND DISPOSITION THEREOF IF TIMELY FILED